## TATA *v.* MUSKOVITZ.

WORKMEN'S COMPENSATION—DITCH DIGGER—EMPLOYMENT RELATION —EVIDENCE.

> Finding of workmen's compensation appeal board that ditch digger was an employee of defendant and not an independent contractor *held,* supported by competent evidence, where it appears that ditch digger was engaged by defendant plumber to install a new sewer when it was ascertained existing sewer could not be unclogged, and while so engaged ditch digger was killed by a cave-in of the trench then dug, defendant had the undertaking completed under his personal direction and at least partially paid for it without any reference to the estate of the deceased.

Appeal from Workmen's Compensation Appeal Board. Submitted October 14, 1958. (Docket No. 50, Calendar No. 47,576.) Decided January 12, 1959.

Angeline Tata presented her claim against Benjamin Muskovitz, doing business as Benjamin Muskovitz Plumbing & Heating, as an employer, and State Accident Fund, insurer, for compensation benefits because of the death of her husband, Gerardo Tata. Award to plaintiff. Defendants appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation § 138.

*Charfoos, Gussin, Weinstein & Kroll (Samuel Charfoos,* of counsel), for plaintiff.

*Harry F. Briggs (Richard C. Rogers,* of counsel), for defendants.

The defendant employer and the defendant insurer review an award to plaintiff under the workmen's compensation law. The reviewable question is stated and counterstated by the respective contenders as follows:

By the defendant-appellants:

"Is one engaged for a single special purpose, for a definite price, who provides his own help, mechanical apparatus, and is held responsible only for the end result, a contractor?"

By the plaintiff-appellee:

"Was there any valid evidence whatsoever to substantiate the appeal board's decision that the decedent, Gerardo Tata, was an employee at the time of his death?"

With adequate evidentiary support the pertinent facts were found by the referee. The appeal board, on review, adopted the referee's findings of fact together with the referee's conclusions of law. Since the referee's findings of fact—distinguished from his conclusions upon the law—are not criticized by defendants-appellants, we in turn adopt the essential portions thereof as follows:

"The facts are these: Defendant Muskovitz was engaged in the business of general plumbing and heating installation and repair. He regularly had from 6 to 12 plumbers and steamfitters on his payroll. The plumbers did some digging, but when a job required substantial digging, defendant either put extra men on his payroll or 'sublet' the digging

job. A job might be 'sublet' for 2 reasons: (1) to save money and (2) to better service defendant's customers.

"In March, 1956, defendant was contacted by the owner of a property at 9150 Russell to clear out a blocked sewer. Defendant undertook the job for $75. He then called deceased who agreed to physically do the job for $50. Deceased began working on the job, and had 2 men working with him. He was unable to clear the sewer and so advised defendant. Defendant then contacted the owner of the premises and informed him that he would have to have a new sewer put in. He thereafter contracted with the owner to put in the new sewer on a time-material basis. Deceased was hired by defendant to dig a trench from the building to a manhole in the alley behind the building. The trench was to be 10 feet deep and about 200 feet long. Deceased was to be paid $6 per hour for his time and $3.50 per hour for his helper's time. There was no written contract between defendant and deceased. All material was supplied by defendant but deceased hired a power shovel and paid for it and its operator. Deceased was told where to dig the trench, but according to defendant's testimony was not supervised in the details of digging. Defendant obtained permits from the city including a permit to dig in city property from the property line to the manhole in the alley. Deceased was told by defendant that the job was an emergency one because of the flooded condition of the owner's basement, and that deceased had to work continuously until it was completed. While deceased was in the trench working, the side caved in on him, and he was killed. The job was finished under defendant's direct supervision by deceased's helper and the power-shovel operator. Deceased's helper was paid $2 per hour directly by the defendant. The power-shovel operator apparently has not yet been paid. The deceased had done similar work for defendant before, and never had been carried on defendant's payroll. Defendant owns no excavation equipment.

"Defendant testified that the reason for the cave-in was that the trench was dug too narrow. He stated, however, that he did not know this at the time and in answer to a question by plaintiff's attorney he stated, 'If I knew the ditch was going to cave, I certainly would stop it, wouldn't I?'

"He also stated that if the job was not satisfactorily performed, that he could take the deceased off the job. * * *

"In the case before us, we find that the work done by deceased was part and parcel of the complete job covered by the contract between defendant and the owner of the premises. The trench was a necessary part of the work of installing a new sewer. The deceased's work was skilled and he was not subject to supervision with reference to the details of his job. He, however, was told where to dig the trench, and generally was limited in his work to the overall plan which defendant had agreed to with the owner of the premises. The defendant was responsible to the city for the trench as well as for the plumbing since the permit was taken out for the entire job in his name. The deceased was paid an hourly rate which however included the cost of certain equipment which he hired. His helper was paid at a separate hourly rate. The deceased was subject to the ultimate control of defendant in that he could be removed at any time. Subsequent to deceased's death, the work which deceased had undertaken was finished under the direction and immediate supervision of defendant, and was at least partially paid for by defendant without any reference to the estate of deceased."

BLACK, J. (*after stating the facts*). As I read the multitudinous pages and the various opinions one finds under the title of *Sheppard* v. *Michigan National Bank,* 348 Mich 577, our massive chirographic effort in that case arrived at this result; Mr. Justice SMITH's dissent in *Wieda* v. *American Box Board Company,* 343 Mich 182, 191, became and now re-

mains reliable Michigan law. In another related direction the same metamorphous change took place —that of adopting earlier dissenting opinions, and earlier prevailing opinions, as the law of our State. I refer here to the succession of opinions shown in *Dyer* v. *Sears, Roebuck & Company,* 350 Mich 92; and *Freiborg* v. *Chrysler Corporation,* 350 Mich 104.

It is time now to complete the cycle of departure from and return to *all* of the measures by which, under the clear weight of authority in this country, the relationship of employer and employee is rightfully identified for compensatory purposes. I move, then, with sight aimed at definite settlement of the steadily recurring question the parties—in the light of the quoted and adopted finding of facts—have stated and counterstated, that we now establish Mr. Justice SMITH's dissenting opinion in *Powell* v. *Employment Security Commission,* 345 Mich 455, 462, as proper guide to relevant interpretation of the workmen's compensation law. Tested by such dissent, the appeal board was clearly right in holding that the relationship of employer and employee existed between plaintiff's decedent, and the defendant Muskovitz, at the time of the fatal cave-in of the trench.

I vote to affirm the award.

SMITH, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred with BLACK, J.

DETHMERS, C. J. (*concurring*). The opinion of this Court in *Powell* v. *Employment Security Commission* (1956), 345 Mich 455, reiterated and reapplied the rule constantly adhered to by this Court, as disclosed in the cases therein cited and many others, that the test of the employer and employee relationship is the right to control. The referee's finding of facts, adopted by the appeal board, contained a

specific finding of certain facts, supported by competent evidence, bearing on the question of right to control. Applying, as he said, the test laid down and followed by this Court, that is the right to control test, the referee determined that the right to control existed in this case and that, accordingly, there was an employer-employee relationship between plaintiff's decedent and defendant employer. Because the finding of such facts is supported by competent evidence and application thereto of said test permits of the result reached by the referee and affirmed by the appeal board, we, too, affirm.

CARR and KELLY, JJ., concurred with DETHMERS, C. J.