RENFROE.*v.* HIGGINS RACK COATING & MANUFACTURING COMPANY, INC.

1. WORKMEN'S COMPENSATION—MASTER AND SERVANT—DUAL EMPLOYMENT.
      Plaintiff, assigned to work at a small factory by a labor broker, who lost three fingers in an industrial accident at the factory, was employed by the factory as well as by the labor broker, and plaintiff's eligibility for workmen's compensation recovery precludes a tort action against the factory (CL 1948, § 411.4).

2. JUDGMENT—SUMMARY JUDGMENT—QUESTION OF FACT.
      The proposition is well recognized that where evidence before a court is incomplete or raises some question of fact, a case should not be disposed of summarily.

3. WORKMEN'S COMPENSATION — MASTER AND SERVANT — SUMMARY JUDGMENT — QUESTION OF LAW.
      Question of whether defendant manufacturing company was an "employer" within the meaning of the workmen's compensation law so as to make plaintiff's recovery under that law exclusive *held*, properly decided by summary judgment, since it was not a question of fact for a jury to decide, **but a**

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Workmen's Compensation §§ 48, 50.
[2] 41 Am Jur, Pleading § 342.
[3] 58 Am Jur, Workmen's Compensation § 461.
[4] 58 Am Jur, Workmen's Compensation §§ 84, 343.
[5] 35 Am Jur, Master and Servant § 3.
   58 Am Jur, Workmen's Compensation § 132.
   Who are "Workmen" or "Operatives" within Workmen's Compensation Act. 129 ALR 990.

question of law which must be decided by a court, where the record and agreed statement of facts showed that there was no dispute as to any of the underlying facts (CL 1948, § 411.4; GCR 1963, 117).

4. MASTER AND SERVANT—DUAL EMPLOYMENT.
    One who is in the general employ of one employer may become the special employee of another under certain circumstances.

5. WORKMEN'S COMPENSATION—EMPLOYMENT—MASTER AND SERVANT —CONTROL—ECONOMIC REALITY.
    The old touchstone of "control" as used in determining whether an employment relationship exists for purposes of workmen's compensation has been de-emphasized in favor of the broader test of "economic reality" which uses a freer and more realistic balancing of all the relevant factors in each case.

Appeal from Wayne, James L. Ryan, J. Submitted Division 1 April 8, 1969, at Detroit. (Docket No. 5,607.) Decided April 23, 1969.

Complaint by Roy Renfroe against Higgins Rack Coating & Manufacturing Company, Inc., a Michigan corporation, for personal injuries. Third-party complaint by Higgins against Employers Temporary Service, Inc., a Michigan corporation. Summary judgment for principal defendant. Plaintiff appeals. Affirmed.

Moore, Maloney & Geralds, for plaintiff.

Davidson, Gotshall, Kelly, Halsey & Kohl (John R. Secrest, of counsel), for defendant Higgins.

BEFORE: LESINSKI, C. J., and FITZGERALD and V. J. BRENNAN, JJ.

LESINSKI, C. J. This is an appeal from grant of summary judgment[1] for defendant against a tort

─────────────
[1] See GCR 1963, 117.

claim arising out of an industrial accident. Plaintiff admittedly received workmen's compensation benefits for the accident from the insurance carrier of third-party defendant Employers Temporary Service, so the only issue before the court below and on this appeal is whether defendant Higgins Co. was an "employer" of plaintiff within the meaning of the workmen's compensation laws so as to make plaintiff's recovery under those laws exclusive, CL 1948, § 411.4 (Stat Ann 1968 Rev § 17.144), thus barring this suit against defendant Higgins Co. as a third-party tort-feasor.

Plaintiff first argues that this question should have gone to the jury for their determination as a "material fact". In support of this contention, he cites several cases which in sum stand only for the well-recognized proposition that where the evidence before the court is incomplete or raises some question of fact, the case should not be disposed of summarily.[2] This principle was reiterated by this Court in *Beck* v. *Delta Recreation Corporation* (1966), 2 Mich App 518, where the opposing party was given "the benefit of all doubt", but the Court nevertheless affirmed the summary judgment because after presenting extensive pleadings and affidavits, the plaintiff had not raised any issue of fact.

In the case at bar, the record contains numerous interrogatories, depositions, and affidavits, which set out the underlying events and circumstances in great detail. These, as well as the agreed statement of facts submitted for purposes of this appeal, reveal that there is no dispute as to any of the underlying facts. Plaintiff's only contention is that on the basis of the agreed facts, defendant should not

---

[2] *Ayers* v. *Genter* (1962), 367 Mich 675; *Schulte* v. *American Box Board Company* (1959), 358 Mich 21; *Graham* v. *Thorman* (1958), 354 Mich 629.

be labeled an "employer" within the meaning of the workmen's compensation law. This is not a question of fact for a jury to decide; it is a question of law which must ultimately be decided by the courts. As such, it is appropriately decided under a motion for summary judgment where full affidavits and depositions disclose no disputed issue of fact. See *Jones* v. *Bouza* (1967), 7 Mich App 561, affirming a summary judgment where the only issue was whether a doctor could be a fellow employee within the meaning of the workmen's compensation law.

The question of law in this case involves an aspect of dual employment (or general and special employment) which has not heretofore been passed on in Michigan. To make the issue clear, we will recite in some detail the facts as agreed to or uncontradicted by the parties.

Third-party defendant Employers Temporary Service (ETS) is what we may call a labor broker, a company whose sole business is supplying temporary labor as needed to all types of industrial and commercial concerns. These concerns call in daily, indicating the skills and number of men needed for how many hours that particular day. ETS then sends the necessary men from among those assembled at its dispatch room. Under the terms of the contract between ETS and the customer, a certain rate per hour is charged for each kind of labor. From this sum which the customer pays to ETS, ETS pays the worker and covers all other costs of employment, including workmen's compensation premiums, social security, and withholding for municipal, State and Federal income taxes.

The worker who comes to ETS for work simply signs a tax withholding form and waits in the dispatch room. A dispatcher comes in with the list of positions for the day and asks who can run a

drill press, sweep floors, *et cetera*. The men indicate what they can do and are assigned to the various jobs. Each is given a time sheet and sent to the customer's place of business. Upon arrival, the worker is under the direction of the customer, who tells him what to do and where and how to do it. He may be moved among different jobs during the day. If he is drunk or incompetent or refuses to work, the customer can discharge him summarily and will only be billed by ETS for work actually done. At the end of the day, the customer fills in the time sheet, and the worker takes it back to ETS, where he is paid immediately for the day's work. ETS then bills the customer periodically. A customer may ask to have a certain worker back again, and such requests are routinely honored, but even in such a case, the worker must go to the dispatch room every morning for reassignment, since ETS has ultimate control over job assignments.

Defendant Higgins Co. was a small manufacturing concern which often used temporary help from ETS. Plaintiff Renfroe had been working for Higgins on daily assignment from ETS for "two or three weeks" when, on September 6, 1962, his right hand was caught in the punch press he was operating, resulting in the loss of three fingers. Plaintiff received medical and disability compensation for this injury from the workmen's compensation carrier for ETS. He now seeks an additional recovery from defendant Higgins Co. as a third-party tort-feasor.

Plaintiff contends that "this case should not be decided on rules set up for providing social remedial legislation in an attempt to provide benefits for injured employees under the workmen's compensation act". In other words, he would have us ignore the liberal approach to the definition of "employer" which is regularly used when a worker is seeking

to establish liability under the workmen's compensation act, and employ instead a restrictive test of who is an employer when, as here, it is in the worker's interest to sue the defendant as a third-party tort-feasor. However, such an approach is foreclosed by CL 1948, § 411.4 (Stat Ann 1968 Rev § 17-.144), which reads:

"Where the conditions of liability under this act exist, the right to recovery of compensation benefits, as herein provided, shall be the exclusive remedy against the employer."

Consequently, our inquiry must be whether the facts of this case would make defendant Higgins Co. liable to pay workmen's compensation benefits under the act. If the answer is yes, we must affirm the summary judgment denying the separate tort claim.

It has long been the law in this State that one who is in the general employ of one employer may become the special employee of another under certain circumstances. *Janik* v. *Ford Motor Co.* (1914), 180 Mich 557; *Arnett* v. *Hayes Wheel Co.* (1918), 201 Mich 67; *Wing* v. *Clark Equipment Co.* (1938), 286 Mich 343. But the Michigan Supreme Court has recently revised the criteria which are to be used to determine whether employment exists for purposes of "social remedial legislation" such as workmen's compensation and employment security. *Tata* v. *Muskovitz* (1959), 354 Mich 695, adopting Justice TALBOT SMITH's dissent in *Powell* v. *Employment Security Commission* (1956), 345 Mich 455, 462; *Schulte* v. *American Box Board Company* (1959), 358 Mich 21; *Goodchild* v. *Erickson* (1965), 375 Mich 289. These cases de-emphasize the old touchstone concept of "control" in favor of the broader test of "economic reality". In assessing this

economic reality, control.is now just one.of the factors to be considered.

"This is not a matter of terminology, oral or written, but of the realities of the work performed. Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one."[3]

We take this to mean that the Supreme Court has not abolished the factors traditionally considered in determining an employment relationship, but has rather reorganized their combination, de-emphasizing the rigid and ambiguous control test and emphasizing a freer and more realistic balancing of all the relevant factors in each case.[4]

Applying such criteria to the facts before us, we conclude that the trial court properly ruled that plaintiff was employed by defendant Higgins Co., so that the workmen's compensation recovery precludes a tort suit. No Michigan case has ruled on these general facts, but we are supported in our conclusion by several cases from other jurisdictions involving similar labor broker situations: *Wright* v. *Habco, Inc.* (Mo, 1967), 419 SW2d 34; *Daniels* v. *MacGregor Co.* (1965), 2 Ohio St 2d 89 (206 NE2d 554); *Chickachop* v. *Manpower, Inc.* (1964), 84 NJ Super 129 (201 A2d 90); *St. Claire* v. *Minnesota Harbor Service, Inc.* (D Minn, 1962), 211 F Supp 521.

---

[3] *Schulte* v. *American Box Board Company* (1959), 358 Mich 21, 33, concurring opinion of Justice TALBOT SMITH. See, also, *Goodchild* v. *Erickson* (1965), 375 Mich 289, 293, and *Industro-Motive Corporation* v. *Wilke* (1967), 6 Mich App 708.

[4] We therefore cannot agree with the United States Court of Appeals for the Sixth Circuit, which expressed the opinion in *Krentz* v. *Union Carbide Corporation* (CA 6, 1966), 365 F2d 113, that the Supreme Court of Michigan has not in fact changed the law applying to loaned employees.

In analyzing the triangular relationship in question here, we may ask, what was the economic reality for each of the three parties? By going to the ETS dispatch room, Ray Renfroe agreed to work for ETS, and since the only work to be done was that of ETS's customers, Renfroe must necessarily have agreed to work for the customers of ETS as well (in this case, Higgins Co.). Renfroe did in fact submit to the direction of the ETS dispatcher in the dispatch room and of Higgins' foreman in the factory.

For ETS, economic reality is based on the fact that a profit can be made by efficiently matching workers with temporary work needs. ETS maintained control of the workers by its practice of daily reassignment and daily payment at its offices. It also maintained the formalities of employment by handling all paper work and payments incident to the employment.

The Higgins Co., in return for a set fee, received a daily worker who it could and did direct among various tasks in its factory. It also received the services of ETS in handling all the aforementioned paperwork incident to the employment, including the making of workmen's compensation premium payments. However, it is perfectly clear that the money for those payments came directly from the fee which Higgins paid, and was one of the expenses included in calculating that fee.[5]

The economic reality of this case is that both ETS and Higgins Co. were employers of Roy Renfroe, each in a different way. It is not necessary to make fine semantic distinctions as to types of degrees of control, *et cetera*. It is enough to say

---

[5] *Cf. St. Claire* v. *Minnesota Harbor Service, Inc.* (D Minn, 1962), 211 F Supp 521, 528, and *Chickachop* v. *Manpower, Inc.* (1964), 84 NJ Super 129, 139 (201 A2d 90, 96).

that either could be liable under the workmen's compensation act, therefore, both are protected by it.

Affirmed. Costs to appellee.

All concurred.