64 Mich. App. 315 (1975)
235 N.W.2d 769
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY
v.
MICHIGAN MUTUAL LIABILITY COMPANY
Docket No. 11293.
Michigan Court of Appeals.
Decided September 22, 1975.
*317 Vandeveer, Doelle, Garzia, Tonkin & Kerr (Goldman, Mason & Steinhardt, of counsel), for plaintiff.
Lilly, Fitzgerald & Smith, for defendant.
Before: BRONSON, P.J., and M.F. CAVANAGH and D.F. WALSH, JJ.
Leave to appeal denied, 395 Mich 830.
BRONSON, P.J.
Plaintiff-appellant, American Mutual Liability Insurance Company, is attempting by way of declaratory judgment to impose on defendant-appellee, Michigan Mutual Liability Company, the burden of satisfying a judgment owed to one Donald H. Barden for injuries he sustained in an industrial accident.
Barden was employed as a truck driver by the Graff Trucking Company. On October 19, 1962 in the course of his employment with Graff he delivered a truckload of paper pulp to the Kalamazoo Paper Company. While assisting a forklift operator  one Edward Shallhorn, a Kalamazoo employee  in unloading the bales of paper pulp, Barden was seriously injured.
Michigan Mutual, the workmen's compensation carrier for Graff, paid workmen's compensation benefits to Barden. Barden and his wife instituted an action in tort against Kalamazoo.
Kalamazoo was insured under a comprehensive general liability policy by American Mutual. American Mutual defended the Barden suit on behalf of Kalamazoo and settled for $125,000. *318 Michigan Mutual obtained a protective order for reimbursement of the amount of workmen's compensation benefits paid to Barden and was subsequently reimbursed.
Contemporaneous with its defense of the Barden complaint, American Mutual brought this declaratory judgment action against Michigan Mutual, alleging that an automobile liability insurance policy issued to Graff by Michigan Mutual provided coverage for Shallhorn, the Kalamazoo forklift operator. The pertinent portions of the Michigan Mutual automobile policy provide as follows:
"COVERAGE A  BODILY INJURY LIABILITY  AUTOMOBILE to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * * caused by accident and arising out of the ownership, maintenance or use of any automobile.
"III. DEFINITION OF INSURED. The unqualified word insured includes the named insured * * * and (2) under coverage A and C any person while using an automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."
American Mutual maintains that Shallhorn used the Graff truck with the permission of Graff (through its employee, Barden) and that Kalamazoo was an "organization legally responsible for the use thereof" because it was Shallhorn's employer. Accordingly, the argument continues, Kalamazoo was an "insured" within the meaning of that term in the Graff automobile policy issued by Michigan Mutual.
Michigan Mutual responds, inter alia, by citing the following exclusion provision contained in the automobile policy:
*319 "This policy does not apply: * * * (f) under coverage A and B, to any obligation for which the insured or any carrier as his insured may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or any similar law; * * * (1) under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured."
Michigan Mutual contends that even if Kalamazoo is deemed to be an insured within the meaning of the automobile policy, Barden was in fact Kalamazoo's employee for purposes of the unloading operation. Since Barden's injury arose out of his employment with Kalamazoo, Michigan Mutual maintains that Kalamazoo is potentially "liable under * * * workmen's compensation * * * law"[1] and the above exclusion provision comes into play, rendering Michigan Mutual immune from any liability under the policy.
The trial judge agreed with Michigan Mutual and entered judgment in its behalf at the close of trial, holding that Barden was "in fact an employee of both the Graff Trucking Company and the Kalamazoo Paper Company for the purposes of the unloading operation". Because of the "employee exclusion" clause, the trial judge concluded that "the policy of Michigan Mutual did not afford coverage to * * * the Kalamazoo Paper Company for the injuries suffered by Don Barden and the litigation arising out of said injuries".
*320 American Mutual appeals this decision of the trial judge and the findings of fact and conclusions of law upon which it depends. It is undisputed that if his determination that Barden was an employee of Kalamazoo at the time of the accident is upheld, the "employee exclusion" clause in the Michigan Mutual automobile policy will protect Michigan Mutual from liability.
American Mutual's attack on the trial judge's finding of an employment relationship between Barden and Kalamazoo is two-fold: (1) the finding that Barden was Kalamazoo's employee is clearly erroneous; (2) Michigan Mutual is estopped from maintaining that Barden was Kalamazoo's employee. We discuss each argument in turn.
I.
Since the trial judge sat as trier of fact in this case, his factual findings cannot be overturned unless we find them to be "clearly erroneous". GCR 1963, 517.1. Put another way:
"We do not substitute our judgment in a non-jury case for that of the trial judge unless the facts clearly indicate an opposite result must be reached." Leidig v Rockwood & Co, 48 Mich App 248, 252; 210 NW2d 257 (1973).
In order to determine whether an employment relationship existed between Barden and Kalamazoo, the trial judge consulted case law construing various provisions of the workmen's compensation and employment security acts. This was entirely appropriate, especially given the prominence of the "employee exclusion" clause defined in terms of potential workmen's compensation liability.
Our Supreme Court applies an "economic reality" *321 test to determine whether an employment relationship exists. Tata v Muskovitz, 354 Mich 695; 94 NW2d 71 (1959), Schulte v American Box Board Co, 358 Mich 21; 99 NW2d 367 (1959), Goodchild v Erickson, 375 Mich 289, 293; 134 NW2d 191 (1965). In Tata, supra, the Supreme Court adopted the views of Justice TALBOT SMITH as expressed in his dissent in Powell v Employment Security Commission, 345 Mich 455, 462 et seq.; 75 NW2d 874 (1956). Justice SMITH elaborated on his conception of the economic reality test, concurring in Schulte, supra, at 33:
"This is not a matter of terminology, oral or written, but of the realities of the work performed. Control is a factor, as is payment of wages, hiring and firing, and the responsibilities for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one."
See, also, Cronk v Chevrolet Local Union 659, 32 Mich App 394, 399; 189 NW2d 16 (1971).
Considering the four factors listed by Justice SMITH in light of the facts of the instant case, and "assigning primacy to no single one" we conclude that the trial judge's finding that Barden was Kalamazoo's employee for purposes of the unloading operation is not clearly erroneous.
There was testimony that Kalamazoo did exercise control over the unloading process, in that Graff truck drivers followed the orders of the Kalamazoo forklift operators and the Kalamazoo shipping clerk. The assistance provided by the Graff drivers came at the request of Kalamazoo, because unloading the bales of pulp was a "two-man job". Though Kalamazoo had no power to hire or fire Graff drivers, Kalamazoo could discipline a given driver by insisting that he not be *322 allowed to deliver pulp in the future. Graff drivers were paid for the time they spent assisting in the unloading process. These payments were made indirectly by Kalamazoo through the tariffs established by Graff and approved by the Michigan Public Service Commission. See Renfroe v Higgins Rack Coating & Manufacturing Co, Inc, 17 Mich App 259, 266; 169 NW2d 326 (1969).
In terms of "economic reality", Kalamazoo was Barden's employer during the unloading process. Kalamazoo requested and received unloading assistance from Graff truck drivers, exercised control over them, paid for their services and profited from their assistance, being spared the necessity of having an additional employee on hand to help the forklift operators unload the bales. Under these circumstances, the trial judge's finding of a "dual employment" relationship, see Renfroe, supra, was not clearly erroneous because the facts do not show that an opposite result must be reached.
II.
American Mutual maintains, in the alternative, that Michigan Mutual should be estopped from asserting that Barden was a Kalamazoo employee at the time of the accident.
The suggestion is that because workmen's compensation is the exclusive remedy for an employee who seeks to recover damages for a work-related injury from his employer,[2] Barden could not have sued Kalamazoo in circuit court unless he was not a Kalamazoo employee. The fact that a settlement agreement was reached between Kalamazoo and Barden and approved by the circuit court is said to indicate that no one involved in the Barden-Kalamazoo *323 suit considered Barden an employee of Kalamazoo. And because Michigan Mutual participated in the Barden-Kalamazoo action by obtaining a protective order to safeguard its subrogation rights, Michigan Mutual cannot now assert that Barden was a Kalamazoo employee. This general argument is supported by reference to three theories of estoppel.
The first is that Michigan Mutual refused a demand to defend Kalamazoo in the Barden-Kalamazoo lawsuit. This refusal, coupled with Kalamazoo's reasonable settlement of the Barden claim, binds Michigan Mutual to the outcome and all attendant factual determinations of that case, just as a party would be bound. One necessary factual prerequisite to the maintenance of the Barden-Kalamazoo lawsuit was Barden's employment status with Kalamazoo, i.e., that Barden was not a Kalamazoo employee. By refusing to defend, it is said that Michigan Mutual necessarily accepted the factual matrix of the Barden-Kalamazoo lawsuit, including the fact that Barden was not a Kalamazoo employee.
While it is generally true that an insurer's wrongful refusal to defend an action against its insured will render the insurer liable for costs and attorneys' fees, Cooley v Mid-Century Insurance Co, 52 Mich App 612; 218 NW2d 103 (1974), we need not decide whether a wrongful refusal to defend carries with it the additional penalties suggested by American Mutual. See Morrill v Gallagher, 370 Mich 578; 122 NW2d 687 (1963). There is nothing in the record before us to suggest that Michigan Mutual was ever requested to defend Kalamazoo in the Barden-Kalamazoo litigation. Absent a request, an insurer has no duty to defend an insured. Eastman v United States, 257 F *324 Supp 315, 319 (SD Ind, 1966), Gribaldo, Jacobs, Jones & Associates v Agrippina Verisicherunges A G, 3 Cal 3d 434, 449; 91 Cal Rptr 6 (1970), Nationwide Mutual Insurance Co v General Accident, Fire & Life Assurance Corp, 23 Ohio App 2d 263; 262 NE2d 885, 887 (1970), Payton v St John, 188 So 2d 647, 652 (La App, 1966). Accordingly, Michigan Mutual could not be bound in any way by the Barden-Kalamazoo lawsuit on the ground that it failed to defend Kalamazoo.
The doctrine of res judicata is also urged by American Mutual in support of its claim that Michigan Mutual is estopped from alleging that Barden was a Kalamazoo employee. American Mutual suggests that one issue necessarily "decided" by the settlement of the Barden-Kalamazoo lawsuit was the fact that Barden was not a Kalamazoo employee. Michigan Mutual, because of its participation[3] in the Barden-Kalamazoo suit, is said to be precluded from asserting the contrary in the present case.
An extended discussion of the law of res judicata *325 is unnecessary.[4] One requirement is that the subsequent case alleged to be barred by or merged in the prior case involved the same "cause of action" as the prior case. Tucker v Rohrback, 13 Mich 73 (1864), Sovereign v Sovereign, 354 Mich 150, 154; 92 NW2d 600 (1958). In order to determine whether the same cause of action is involved, we must decide:
"[W]hether the facts or the evidence essential to the maintenance of the two actions are identical. If they are, the doctrine of res judicata bars the subsequent action."
Mango v Plymouth Township Board of Trustees, 33 Mich App 715, 718; 190 NW2d 285 (1971), Topps-Toeller v City of Lansing, 47 Mich App 720; 209 NW2d 843 (1973).
A comparison of the Barden-Kalamazoo case with the instant action confirms Michigan Mutual's claim that they are quite different. The Barden-Kalamazoo lawsuit sounded in tort and was based on traditional negligence principles, requiring proof of duty, breach, proximate cause and the like. The present American Mutual-Michigan Mutual litigation is a declaratory judgment action seeking a judicial interpretation of an insurance policy. This case calls for different witnesses and different proofs to establish facts different from those involved in the Barden-Kalamazoo action. Since the two lawsuits do not involve the same facts or evidence, res judicata principles will not prevent Michigan Mutual from asserting that Barden is a Kalamazoo employee.[5]
*326 Finally, American Mutual turns to the law of collateral estoppel to prevent Michigan Mutual from using Barden's employment status as a shield to avoid liability under the insurance policy. Collateral estoppel, a variant of res judicata, prohibits parties from relitigating those issues which have previously been decided between them.[6] American Mutual asserts that the consent judgment entered in the Barden-Kalamazoo lawsuit conclusively established that Barden was not a Kalamazoo employee. Assuming once again[7] for purposes of argument that Michigan Mutual actually participated sufficiently in the Barden-Kalamazoo dispute to warrant its being bound by the consent decree, the question becomes: What, if anything, is actually adjudicated between two parties to a consent judgment?
This is a question of first impression in Michigan. There is a split in other jurisdictions,[8] though recent cases have refused to give collateral estoppel effect to consent judgments.[9] For the reasons which follow,[10] we are of the opinion that consent *327 judgments should not be given collateral estoppel effect.
First, collateral estoppel rules do not require that a consent judgment bind a party to facts which were originally in issue in the action that was settled.[11] A consent judgment reflects primarily the agreement of the parties. Dora v Lesinski, 351 Mich 579, 582; 88 NW2d 592 (1958). The action of the trial judge in signing a judgment based thereon is ministerial only. The parties have not litigated the matters put in issue, they have settled. The trial judge has not determined the matters put in issue, he has merely put his stamp of approval on the parties' agreement disposing of those matters.[12] But a judgment can be given collateral estoppel effect only as to those issues which were actually and necessarily adjudicated. Howell v Vito's Trucking and Excavating Co, 386 Mich 37, 42; 191 NW2d 313 (1971). It follows that because the issues involved in the settled case were not actually adjudicated, one of the prerequisites to giving a judgment collateral estoppel effect is not satisfied. Thus, the answer to the question posed above is: Nothing is adjudicated between two parties to a consent judgment.[13]
While the fact that a consent judgment does not satisfy the legal requirements of collateral estoppel is reason enough to reject American Mutual's contention, there are also persuasive policy reasons for denying collateral estoppel status to consent decrees. The social interest in reducing instances *328 of costly litigation is undermined by a rule which provides drastic consequences for settlements. One will tend to avoid a settlement rather than be later bound in potentially far-reaching, and often unintended, ways by facts imbedded in an otherwise innoccuous settlement agreement. Because the application of the doctrine of collateral estoppel to consent judgments will in many cases be unforeseeable, consent judgments may become less desirable, thus impeding and embarrassing the settlement process.[14] As Professor James puts it: "Any rule which tends to assure contest rather than compromise * * * probably tends, on balance, to increase rather than decrease litigation."[15]
Moreover, refusing to construe consent judgments as adjudicating the issues joined therein will not threaten any legitimate expectations of repose, since none of the parties to the consent judgment ever bargained for such protection.[16] Nor will a rule giving collateral estoppel effect to consent judgments promote judicial consistency, since the judges are not deciding anything.[17] In short,
"Where the parties to a consent judgment have not agreed to be * * * bound [collaterally upon a certain point], the rules pertaining to the effect of judgments do not require that they should be, and the relevant considerations of policy and expediency require that they should not be."[18]
We hold that Michigan Mutual is not collaterally *329 estopped from maintaining that Barden was a Kalamazoo employee.[19]
In conclusion, Michigan Mutual is not prohibited from claiming that Barden was Kalamazoo's employee at the time of the accident. The trial judge's decision to sustain this claim is not clearly erroneous and must be affirmed. Accordingly, the trial judge was correct in holding that the "employee exclusion" clause of the Michigan Mutual automobile *330 insurance policy applies to absolve Michigan Mutual from liability to American Mutual.
Affirmed. Costs to appellee.
NOTES
[1] The fact that Barden was injured by a "fellow servant" is no longer relevant. MCLA 418.827; MSA 17.237(827), MCLA 418.141; MSA 17.237(141). Indeed, workmen's compensation would be Barden's exclusive remedy. Sergeant v Kennedy, 352 Mich 494; 90 NW2d 447 (1958).
[2] MCLA 418.131; MSA 17.237(131).
[3] It is clear that the party to be estopped must have participated in the prior action for res judicata to apply. Jordan v C A Roberts Co, 379 Mich 235, 243; 150 NW2d 792 (1967).

Michigan Mutual's participation in the Barden-Kalamazoo suit consisted of: 1) filing a motion to be joined as a party plaintiff or in the alternative to have a lien imposed on any recovery obtained by Barden in order to protect its rights as subrogee as to the amount of workmen's compensation benefits already paid to Barden; 2) obtaining a protective order from the trial court which required reimbursement to Michigan Mutual out of the proceeds of the litigation and denying to Michigan Mutual both party status and the right to actively participate in the suit; 3) inclusion in the consent judgment of an order of reimbursement. We assume for purposes of this appeal, but do not decide, that Michigan Mutual "participated" in the Barden-Kalamazoo lawsuit for res judicata purposes. On this issue, see Bachelder v Brown, 47 Mich 366; 11 NW 200 (1882), Carpenter v Carpenter, 136 Mich 362; 99 NW 395 (1904), Walz v Reliance Insurance Co of Philadelphia, 221 Mich 345; 191 NW 236 (1922), Hedler v Manning, 252 Mich 195; 233 NW 223 (1930), Jones v Chambers, 353 Mich 674, 681-682; 91 NW2d 889 (1958).
[4] For a summary of the applicable principles see Howell v Vito's Trucking and Excavating Co, 386 Mich 37; 191 NW2d 313 (1971), Jacobson v Miller, 41 Mich 90; 1 NW 1013 (1879).
[5] Had the two cases been identical, the fact that the Barden-Kalamazoo case was a consent judgment would not have rendered traditional res judicata analysis inapplicable. See Russell v White, 63 Mich 409, 412; 29 NW 865 (1866), Tudryck v Mutch, 320 Mich 99; 30 NW2d 518 (1948), Prawdzik v Heidema Bros, Inc, 352 Mich 102, 112; 89 NW2d 523 (1958), Knowlton v City of Port Huron, 355 Mich 448; 94 NW2d 824 (1959), Shank v Castle, 357 Mich 290, 296; 98 NW2d 579 (1959), In re Bizanes Estate, 363 Mich 396; 109 NW2d 823 (1961).
[6] See Howell v Vito's Trucking and Excavating Co, 386 Mich 37, 42; 191 NW2d 313 (1971).
[7] See fn 2, supra.
[8] Annotation, 2 ALR2d 514; James, Consent Judgments as Collateral Estoppel, 108 U Pa L Rev 173, 174, footnotes 4 and 6 (1959).
[9] In re Penn Central Transportation Co, 354 F Supp 759, 770 (ED Pa, 1972), Sealol Corp v Flexibox, Ltd, 242 F Supp 693 (D DC, 1965), Sleck v Butler Bros, 53 Ill App 2d 7; 202 NE2d 64 (1964), People v Barenfeld, 203 Cal App 2d 166; 21 Cal Rptr 501 (1962), Eaton v Allen, 362 P2d 93 (Okla, 1961), Burgess v Consider H Willett, Inc, 311 Ky 745; 225 SW2d 315 (1949).
[10] We have adopted and hereby acknowledge the analysis of Professor James as presented in his article, Consent Judgments as Collateral Estoppel, 108 U Pa L Rev 173 (1959).
[11] Id., at 176.
[12] Id., at 178-179.
[13] It goes without saying that if the parties intend that the settlement is to bind them on certain issues of fact, and if this intention is reflected in the consent judgment, collateral estoppel will apply. See James, supra, at 180. The consent judgment involved here does not go so far.
[14] James, Consent Judgments as Collateral Estoppel, 108 U Pa L Rev 173, 191 (1959).
[15] Id., at 185.
[16] Id., at 185.
[17] Id., at 186.
[18] Id., at 193. This is the prevailing view of the commentators. See articles cited in James article, supra, at 174, footnote 6.
[19] American Mutual also suggests that the doctrine of "equitable estoppel" will bar Michigan Mutual from taking a position on Barden's employment status different from that implicit in the Barden-Kalamazoo lawsuit. Some of the cases cited in support of this argument are, strictly speaking, examples of the rule of collateral estoppel, where one party attempts to assert a claim against another inconsistent with a fact previously determined between them. See, e.g., Besonen v Campbell, 243 Mich 209; 220 NW 301 (1928), Chatham-Trenary Land Co v Swigart, 245 Mich 430; 222 NW 749 (1929), Michaelson v Simula, 264 Mich 457; 250 NW 264 (1933), Rodgers v Mikolajczak, 361 Mich 61; 105 NW2d 25 (1960), Burgess v. Holder, 362 Mich 53; 106 NW2d 379 (1960). Other cited cases involve the principle that a party making a judicial admission by espousing one view before a court may not contradict that admission on a subsequent occasion. Hassberger v General Builders' Supply Co, 213 Mich 489; 182 NW 27 (1921), Majewski v Martin Bros Barrel & Box Co, 230 Mich 548; 203 NW 102 (1925). Still others apply the doctrine of "election of remedies" which provides that once a party chooses one method of obtaining relief, he may not later select a different and inconsistent alternative. Mintz v Jacob, 163 Mich 280; 128 NW 211 (1910), Donovan v Curts, 245 Mich 348; 222 NW 743 (1929), Mertz v Mertz, 311 Mich 46; 18 NW2d 271 (1945), Morris v Ford Motor Co, 320 Mich 372; 31 NW2d 89 (1948).

These cases involve principles which are inapplicable to the facts before us. Michigan Mutual did not take any position at all in the Barden-Kalamazoo lawsuit. It merely sought to protect its subrogation rights by requesting a protective order. Its payment of workmen's compensation benefits to Barden, while indicative of a belief that Barden was Graff's employee, does not in the least constitute an admission that Barden was not also at the same time a Kalamazoo employee. Mere payment of benefits does not determine the rights of the parties, MCLA 418.831; MSA 17.237(831). Moreover, Kalamazoo, as Barden's employer, might be liable for workmen's compensation benefits along with Graff. MCLA 418.435; MSA 17.237(435), Renfroe v Higgins Rack Coating & Manufacturing Co, Inc, 17 Mich App 259; 169 NW2d 326 (1969). Since no facts were adjudicated in the Barden-Kalamazoo lawsuit, and since Michigan Mutual did not, and in fact was ordered not to, take part in that case, there is no basis for estoppel, be it "equitable" or otherwise.