Harold M. FITZGERALD, Plaintiff,

v.

**MOBIL OIL CORPORATION, a foreign corporation, and Montgomery Tank Lines, Inc., a foreign corporation, jointly and severally, Defendants.**

No. 92–CV–74693.

United States District Court, E.D. Michigan, S.D.

Aug. 6, 1993.

Harvey M. Howitt, Bernstein & Bernstein, P.C., Southfield, MI, for plaintiff.

Dennis E. Zacharski, Birmingham, MI, for Travelers Ins.

Jeffrey G. Powers, Sullivan, Ward, Bone, Tyler & Asher, Southfield, MI, for Mobil Oil and Montgomery Tank Lines.

## OPINION AND ORDER

FEIKENS, District Judge.

Defendant Mobil Oil Corporation moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). At a hearing held on June 18, 1993 I took the motion under advisement. Having considered the briefs and oral arguments, I find in favor of Mobil Oil, and dismiss Mobil Oil as a defendant in this case. Plaintiff may proceed against the remaining defendant, Montgomery Tank Lines, Inc.

Plaintiff, a tractor-trailer driver, was injured on the job when he fell from the top of the tanker trailer he used to deliver oil. The trailer was owned by defendant Montgomery Tank Lines, Inc., and leased to Mobil Oil. The tractor was owned by a third party, Jerry Rieger, and also leased to Mobil Oil. Plaintiff was hired to deliver loads of oil from Mobil Oil's Woodhaven Lube Plant and Terminal in Woodhaven, Michigan to various Mobil Oil customers. Plaintiff's Complaint alleges that both defendants negligently provided plaintiff with an unsafe and defective tanker, and that the tanker was not equipped with adequate safety devices.

Mobil Oil's defense is based on the "exclusive remedy provision" of Michigan's Worker's Disability Compensation Act. M.C.L. § 418.131; M.S.A. § 17.237(131). It provides that "[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer." Consequently, Mobil Oil's motion turns on whether or not it can be considered plaintiff's employer. Plaintiff denies that Mobil Oil was his employer.

Generally, determination of an employer/employee relationship is a question of law for the judge.

Whether a company is a particular worker's "employer," as that term is used in the workers' compensation act, is a question of law for the courts to decide if the evidence on the matter is reasonably susceptible of but a single inference. *Nichol v. Billot,* 406 Mich 284, 302–303; 279 NW2d 761 (1979) (quoting *Flick v. Crouch,* 434 P2d 256 [Okla, 1967]). Only where the evidence bearing on the company's status is disputed, or where conflicting inferences may reasonably be drawn from the known facts, is the issue one for the trier of fact to decide.

*Derigiotis v. J.M. Feighery Co.,* 185 Mich. App. 90, 94, 460 N.W.2d 235 (1990), *app. den.,* 437 Mich. 936 (1991) (quoting *Kenyon v. Second Precinct Lounge,* 177 Mich.App. 492, 497, 442 N.W.2d 696 (1989)). Although plaintiff's employment situation was complex and confusing,[1] the facts, when interpreted in light of Michigan precedent, are susceptible of only one inference—Mobil Oil was plaintiff's employer.

Plaintiff was initially hired by Jerry Rieger, the owner and lessor of the tractor plaintiff used to haul loads. But before Rieger would agree to hire him, plaintiff had to pass a road test administered by Mobil Oil at a Mobil Oil facility in Pennsylvania. At the time, plaintiff knew that he was being considered for work involving Mobil Oil, and that if he failed the road test he would not have a job.

Plaintiff telephoned a Mobil dispatcher at least once a day for work assignments. The dispatcher told him where to deliver oil and how much to deliver. Plaintiff also contacted Jerry Rieger on a daily basis; and submitted his paperwork—travel logs, unloading records, fuel and other expense receipts—to

---

1. In his deposition plaintiff states: "I was totally confused the whole time I was there about who I was working for or who I was getting paid by."

Rieger on a weekly basis. Determination of his wages depended on these records. But plaintiff's paycheck was issued by yet another company, TLI, Inc. TLI had a contract with Mobil Oil to provide tractor-trailer drivers for Mobil Oil's use. Mobil reimbursed the company for driver wages and other expenses, including worker's compensation insurance premiums. However, the contract specifically disclaims the existence of an employer/employee relationship between Mobil Oil and TLI-supplied drivers. After his injury, plaintiff received worker's compensation benefits from TLI.

Mobil Oil argues that both TLI and Mobil Oil were plaintiff's employers for purposes of the worker's compensation laws. *Renfroe v. Higgins Rack Coating & Manufacturing Co.,* 17 Mich.App. 259, 169 N.W.2d 326 (1969), recognized the "triangular relationship" that exists between a worker, a supplier of temporary workers (or labor broker) and a user of those workers. *Renfroe* concluded that both the labor broker and the end-user are employers of the worker, and therefore protected by the exclusive remedy provision. Plaintiff's situation involves a fourth player, Jerry Rieger. However, Rieger and TLI, in combination, fill the labor broker role.

*Renfroe* was embraced by the Michigan Supreme Court in *Farrell v. Dearborn Manufacturing Co.,* 416 Mich. 267, 330 N.W.2d 397 (1982). The opinion describes the typical labor broker situation as follows:

> The customers of a labor broker typically call in their employment needs on a daily basis, and workers are sent by the broker to fill these needs. After arriving at the place of business, the worker is subject to the control and authority of the customer and the customer's supervisory personnel. The customer has the power to discharge the employee from the daily work assignment and can refuse to accept a worker sent by the broker. The customer does not pay the employee directly. Rather, the labor broker pays the employee and includes as part of its charge to the customer amounts to cover its expenses for compensation premiums, social security, and other taxes.

*Farrell,* 416 Mich. at 275–76, 330 N.W.2d 397. As in *Renfroe,* the Court found that workers in a labor broker situation must be considered employees of both the labor broker and the end-user. As a consequence, both are protected by the exclusive remedy provision.

The relationship between TLI and Mobil Oil does not match this description in all respects. Plaintiff was on long-term assignment to Mobil Oil, and, because of the nature of his job, was not closely supervised by Mobil Oil personnel. As a truck driver, plaintiff was unlikely to be subjected to the same close supervision often associated with factory and office work. This fact arguably decreases the closeness of the relationship between plaintiff and Mobil Oil. On the other hand, the fact that plaintiff was on long-term assignment to Mobil Oil strengthens their relationship. On balance the differences are not enough to alter the outcome.

### Economic Realities Test

Michigan courts rely on the "economic realities test" to establish the existence of an employer/employee relationship. Both *Renfroe* and *Farrell* use this test. The language of a written agreement, such as the one between TLI and Mobil Oil, is not controlling. *White v. Central Transport, Inc.,* 150 Mich.App. 128, 129, 388 N.W.2d 274, *app. den.,* 425 Mich. 864 (1986); *Tolbert v. U.S. Truck Company,* 179 Mich.App. 471, 476, 446 N.W.2d 484 (1989). Furthermore, the same test is used whether asserted by the plaintiff as a sword or by the defendant as a shield. *Wells v. Firestone Tire and Rubber Co.,* 421 Mich. 641, 651, 364 N.W.2d 670 (1984); *Nichol v. Billot,* 406 Mich. 284, 299, 279 N.W.2d 761 (1979).

The economic realities test includes four elements: "(1) control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Askew v. Macomber,* 398 Mich. 212, 217–18, 247 N.W.2d 288 (1976). No single element is controlling; the totality of the circumstances must be considered. *Farrell,* 416 Mich. at 276, 330 N.W.2d 397.

**Control.** Plaintiff's deposition indicates that he contacted a Mobil Oil dispatcher by phone on a daily basis to obtain work assignments. Those assignments involved hauling oil from Mobil Oil's Woodhaven processing plant and delivering it to Mobil Oil customers. The oil was generally loaded into plaintiff's tanker by Mobil Oil employees and unloaded by plaintiff. Plaintiff kept his truck at Mobil Oil's Woodhaven facility when it was not in use, and hauled exclusively for Mobil Oil. Plaintiff also contacted Mobil Oil when the tanker needed to be washed, to complain about the tanker, and to complain about other Mobil Oil employees.

On the other hand, plaintiff was trained by an individual who appeared to be an employee of Jerry Rieger. He invariably telephoned Rieger after receiving an assignment from Mobil Oil to obtain Rieger's approval. And on at least one occasion plaintiff refused an assignment after Rieger told him not to accept it. Plaintiff delivered his travel logs and other paperwork to Rieger. He contacted Rieger when his tractor needed servicing; and Rieger arranged for repairs.

These facts indicate that plaintiff's job duties were controlled, at least in significant part, by Mobil Oil. In *Renfroe, supra,* the court found that partial control is enough to establish an employer/employee relationship. Exclusive control is not required.

> The economic reality of this case is that both ETS [the labor broker] and Higgins Co. [the end-user] were employers of Roy Renfroe, each in a different way. It is not necessary to make fine semantic distinctions as to types of degrees of control, *et cetera.* It is enough to say that either could be liable under the workmen's compensation act, therefore, both are protected by it.

*Id.,* 17 Mich.App. at 266–67, 169 N.W.2d 326.

**Payment of Wages.** Mobil Oil clearly satisfies this element of the economic realities test. The lease agreement between TLI and Mobil Oil includes the following:

> LESSEE shall be liable to LESSOR for reimbursement of all wages as aforesaid and benefit payments which LESSOR has made to drivers for services rendered and at the direction of the LESSEE driver expenses approved by LESSEE.
>
> .... LESSEE's liability, in addition to the aforementioned amounts shall include the LESSOR's share of F.I.C.A., Worker's Compensation, Federal and State Unemployment and liability or bonding premiums as required.

Payment of wages in this indirect fashion was enough to establish the wages element in several Michigan cases. *Tolbert v. U.S. Truck Co., supra; White v. Central Transport, Inc., supra; Farrell v. Dearborn Mfg. Co., supra; Renfroe v. Higgins Rack Coating & Mfg. Co., supra.*

**Right to Hire, Fire, and Discipline.** Under the terms of Mobil Oil's contract with TLI it had the right to refuse plaintiff's services. Plaintiff argues that TLI had other customers, and that if Mobil Oil refused his services, he could have worked for another customer. According to plaintiff, only TLI or Jerry Rieger had the power to completely take away his livelihood.

However, the fact remains that plaintiff was hired for a specific job. If Mobil Oil had terminated his services he would have been without an assignment, at least temporarily.[2] The power to stop plaintiff from engaging in the daily tasks he relied on for wages is enough to satisfy the test.

Moreover, approval by Mobil Oil was a condition precedent to plaintiff's hiring. Plaintiff was required to pass a road test administered by Mobil at a Mobil Oil facility in Pennsylvania before Rieger agreed to hire him. Without Mobil's approval plaintiff would have never been employed by Rieger or TLI.

**Performance of Duties as an Integral part of Employer's Business.** As a deliverer of Mobil Oil's product, plaintiff's work constituted an integral part of the company's business. Delivery is an ongoing and neces-

---

**2.** Indeed, after plaintiff recovered sufficiently from his injuries to return to work, he contacted TLI about the possibility of working for another customer. Plaintiff was sent on one job interview, but nothing came of it.

sary function, not a short term or irregular project. Furthermore, although truck drivers are often independent contractors, this is not necessarily the usual or normal arrangement. Mobil Oil satisfies this element of the test as well.

In conclusion, the economic realities of the situation are that Mobil Oil was plaintiff's employer. All of the relevant factors lean heavily in Mobil Oil's favor. Taken as a whole, there can be no doubt that Mobil Oil satisfies the test. As a consequence, Mobil Oil is protected from suit by the exclusive remedy provision of the Worker's Disability Compensation Act. The Michigan Court of Appeals reached a similar conclusion in *White, supra,* and *Tolbert, supra.* Both of these cases involved leased truck drivers. Mobil Oil is dismissed as a defendant in this case.

Plaintiff argues with some force that Mobil Oil has effectively insulated itself from all responsibility for workers. By using a labor broker, Mobil Oil is relieved of direct responsibility for worker's compensation insurance premiums and payment of benefits. Presumably, Mobil Oil obtains other advantages from denying the existence of an employer/employee relationship as well. On the other hand, Mobil Oil escapes the potential tort liability non-employers normally face. Justice Ryan of the Michigan Supreme Court recognized this imbalance of rights in his dissenting opinion in *Farrell v. Dearborn Manufacturing Co.,* 416 Mich. at 286–87, 330 N.W.2d 397:

> My colleague's approach suggests that if two companies can divide the attributes of employment equally enough, *both* will be entitled to the "exclusive remedy" bar of the statute, even though only one set of workers' compensation insurance premiums must be paid. In short, my colleague's opinion advertises "two bars for the price of one".
>
> Moreover, from a purely policy perspective, the Court's decision enables a company to insulate itself from the economic consequences of an unsafe workplace. It seems clear that the Legislature contemplated that either total liability or higher workers' compensation insurance rates

would provide an economic incentive for every company to care about worker safety. It now appears that the labor broker scheme my be an expedient method of avoiding either type of liability.

However, this was not the prevailing opinion. As a federal judge, I am not in a position to change the law, especially state law. Only the Michigan Legislature can address this inequity.

IT IS SO ORDERED.