FARRELL v DEARBORN MANUFACTURING COMPANY

MARFUTA v H L BLACHFORD MANUFACTURING COMPANY

WOOTEN v SENNETT STEEL COMPANY

KELLOGG v THE HOCKEY CLUB OF SAGINAW, INC

Docket Nos. 63267, 64575, 64873, 65119. Argued May 5, 1981 (Calendar Nos. 1-4).—Decided December 23, 1982.

Thomas Farrell brought an action against the Dearborn Manufacturing Company as a third-party tortfeasor for damages arising from injuries he received while operating the company's die press. The plaintiff was a temporary employee supplied to Dearborn by State Labor, Inc., a labor broker. Dearborn moved for summary judgment on the ground that it was not a third-party tortfeasor, but was in fact the plaintiff's employer and therefore was immune from liability because of the exclusive remedy provision of the workers' compensation act. The Wayne Circuit Court, Richard R. Robinson, J., denied the motion. The Court of Appeals, N. J. Kaufman, P.J., and V. J. Brennan and Bashara, JJ., denied the defendant's application for leave to appeal (Docket No. 43223). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the trial court for an explanation why the motion was denied. Following remand, the defendant appeals.

Jane Marfuta brought an action against H. L. Blachford Manufacturing Co. and others for damages arising from injuries received while she was operating a diecutting roller press at the company. She was a temporary worker supplied to Blachford by Kelly Services, Inc., a labor broker. Blachford moved for summary or accelerated judgment on the same ground as that asserted by Dearborn. The Wayne Circuit Court, Myron Wahl, J., granted summary judgment. The Court of Appeals, MacKenzie, P.J., and D. F. Walsh, J., affirmed in an unpublished opinion per curiam (Docket No. 78-4250). The plaintiff appeals.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 82 Am Jur 2d, Workmen's Compensation §§ 408, 412.

[2, 4, 5] 81 Am Jur 2d, Workmen's Compensation § 120.

[5] 81 Am Jur 2d, Workmen's Compensation § 77.

[6] 82 Am Jur 2d, Workmen's Compensation §§ 407, 408.

Ricky Wooten brought an action against Sennett Steel Company and Cincinnati, Inc., for damages arising from injuries he received while working on Sennett's steel shear, which was manufactured by Cincinnati. Wooten was a temporary worker, supplied by Employers Temporary Service. Sennett moved for summary judgment on the same grounds. The Oakland Circuit Court, James S. Thorburn, J., granted the motion. The Court of Appeals, R. M. Maher, P.J., and M. F. Cavanagh and Cynar, JJ., affirmed in an unpublished memorandum opinion (Docket No. 44970). The plaintiff appeals.

John R. Kellogg and Winnifred R. Kellogg brought an action against The Hockey Club of Saginaw, Inc., and Reginald Fleming, one of the club's hockey players, for damages arising from injuries John Kellogg received when Fleming hit him with a hockey stick and pushed him into the goal cage bars during a hockey game. John Kellogg was employed as a linesman for the International Hockey League. The defendants moved for summary judgment on the same exclusive remedy ground. The St. Clair Circuit Court, Ernest T. Oppliger, J., denied the motion. The Court of Appeals, D. C. Riley, P.J., and R. B. Burns and D. E. Holbrook, Jr., JJ., reversed in an unpublished opinion per curiam (Docket No. 78-4125). The plaintiffs appeal.

The cases were consolidated on appeal. In an opinion by Chief Justice Fitzgerald, joined by Justices Kavanagh, Williams, Levin, and Coleman, the Supreme Court *held:*

The exclusive remedy available to a temporary employee who is provided to an employer by a labor broker and who suffers a job-related injury is provided by the workers' compensation act, precluding a separate action in tort against the customer of the labor broker. A hockey league, however, is not a labor broker for teams which are members of the league. Linesmen and referees supplied by the league to officiate at hockey games are employed solely by the league. Therefore the exclusive remedy provision of the workers' compensation act does not bar a cause of action in tort by a linesman against a hockey team or its team members for injuries sustained in the course of his employment.

1. Whether an employment relationship exists for workers' compensation purposes is determined by the economic reality test. That test looks to the employment situation in relation to the statutory scheme of the act and considers the control of workers, payment of wages, allocation of responsibilities, maintenance of discipline, and other factors. The roles of a labor broker and its customer, when the test is applied, are seen to

be so integrally related that their common objectives are realized only by a combined business effort. A person sent by a labor broker to work for the broker's customer is employed by both and thus is within the scope of the act's exclusive remedy provision for job-related injuries.

2. Under the economic reality test, a hockey league and member teams are not dual employers of linesmen and referees. Nor does the league act as a labor broker for the member teams. The relationship among the league, referees, and teams is unique. However, when the factors of the test are applied, the game officials are seen to work only for the league. Therefore, the exclusive remedy provision for job-related injuries does not bar a cause of action against a hockey team by a linesman injured by a team member during a hockey game. In like manner, a team member is not a co-employee of a linesman, and an action may be maintained by the linesman against the team member for an intentional tort.

The judgments of the Court of Appeals in *Marfuta* and *Wooten* are affirmed, and the judgments in *Farrell* and *Kellogg* are reversed.

Justice Ryan, dissenting in part, wrote that under the workers' compensation act the employer is solely and totally responsible for workers' compensation benefits. The Legislature intended that either total liability or higher workers' compensation insurance rates would provide an economic incentive for every company to care about worker safety. The Court says that it is necessary to examine the rules of the labor broker and its customers to determine which is to be considered the employer for purposes of the exclusive remedy provision, but then apparently holds that both are employers. The decision would permit companies involved in a labor broker scheme to avoid either type of liability. The Court should have determined whether the labor broker or its customer is to be considered an employer for purposes of the exclusive remedy provision of the act. Justice Ryan concurred in the opinion in the hockey case.

### OPINION OF THE COURT

1. WORKERS' COMPENSATION — EXCLUSIVE REMEDY — LABOR BROKERS.
   The workers' compensation act provides the exclusive remedy for a temporary worker who is provided to an employer by a labor broker and who suffers a job-related injury, precluding a separate action in tort against the customer of the labor broker (MCL 418.131; MSA 17.237[131]).

2. Workers' Compensation — Exclusive Remedy — Hockey
    Leagues — Hockey Teams.

   Workers such as linesmen and referees who are provided by a
   hockey league to officiate at hockey games between league
   teams are employees of the league and not of the member
   teams; therefore, the exclusive remedy provision of the work-
   ers' compensation act does not bar separate actions in tort
   against a hockey team or its players by an official who suffers a
   job-related injury during a game (MCL 418.131; MSA
   17.237[131]).

3. Workers' Compensation — Exclusive Remedy — Labor Brokers.

   The roles of a labor broker and its customer are designed to fulfill
   short-term employment needs, and when control of temporary
   employees, payment of wages, allocation of responsibilities,
   maintenance of discipline, and other factors which clarify the
   economic reality of the employment situation are viewed, it is
   clear that the broker and its customer are so integrally related
   as to permit realization of their common business objectives
   only by combined effort; therefore both are employers of the
   temporary employees for the purposes of the workers' compen-
   sation act, precluding a separate action in tort against the
   customer of the broker by a temporary employee who suffers a
   job-related injury (MCL 418.131; MSA 17.237[131]).

4. Workers' Compensation — Exclusive Remedy — Hockey
    Leagues — Hockey Teams.

   The relationship among a hockey league, linesmen and referees,
   and member teams is unique and the league and teams are not
   dual employers of the officials; when control of the officials,
   payment of their wages, maintenance of discipline, and other
   factors which clarify the economic reality of the employment
   situation are viewed, it is clear that the officials are employed
   solely by the league, and therefore the exclusive remedy provi-
   sion of the workers' compensation act does not bar an action
   against a member team by an official who suffers a job-related
   injury (MCL 418.131; MSA 17.237[131]).

5. Workers' Compensation — Third-Party Tortfeasors — Co-Em-
    ployees.

   A member of a hockey team is not a co-employee of a linesman or
   a referee who officiates during a hockey game, and therefore
   acceptance of workers' compensation benefits by a game official
   for injuries inflicted by a team member during a game does not
   preclude a third-party action by the official against the team

member for an intentional tort (MCL 418.827; MSA 17.237[827]).

OPINION DISSENTING IN PART BY RYAN, J.

6. WORKERS' COMPENSATION — EXCLUSIVE REMEDY — LABOR BROKERS.
The workers' compensation act provides that the employer is solely and totally responsible for payment of workers' compensation benefits, and the Legislature intended that either total liability or higher workers' compensation insurance rates would provide an economic incentive for every company to care about worker safety; to hold that both a labor broker and its customer are employers destroys that incentive by permitting each to avail itself of the act's exclusive remedy bar even though only one insurance premium is paid, and thus enables a company to insulate itself from the economic consequences of an unsafe workplace; either the broker or its customer should be determined to be the employer for purposes of the exclusive remedy provision (MCL 418.131; MSA 17.237[131]).

*Cockrel, Cooper, Spearman & King* (by *Anthony J. Vigliotti* and *David J. Cooper*) for plaintiff Thomas Farrell.

*Ripple, Chambers & Steiner, P.C.* (by *Courtney E. Morgan, Jr.*), for plaintiff Jane Marfuta.

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman*) for plaintiff Ricky Wooten.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *James P. Feeney* and *Frank Nizio*) for plaintiffs John R. Kellogg and Winnifred R. Kellogg.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Richard A. Harvey* and *Gary A. Maximiuk*), for defendant Dearborn Manufacturing Co.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Jon Feikens*), for defendant H. L. Blachford Manufacturing Co.

*Law Offices of J. R. Zanetti, Jr. (by J. R. Zanetti, Jr.),* for defendant Sennett Steel Co.

*Martin, Bacon & Martin, P.C. (by James N. Martin and Robert Patrick George),* for defendants The Hockey Club of Saginaw, Inc., and Reginald Fleming.

FITZGERALD, C.J. Four cases were consolidated on appeal to this Court, all questioning the application of the exclusive remedy provision of the Worker's Disability Compensation Act. Three cases involve a labor broker situation in which temporary employment is provided to a business customer; one presents an unusual employment relationship of hockey teams and the sports league to which they all belong. To facilitate our analysis, we will deal with the labor broker cases together and separately address the hockey case.

I

Thomas Farrell was sent to work at Dearborn Manufacturing Company by State Labor, Inc. State Labor, Inc., is a labor broker, a company engaged in the business of furnishing employees to others. While operating a press at Dearborn Manufacturing, Mr. Farrell suffered a severe injury to his right hand. He applied for and received workers' compensation benefits from State Labor's insurance carrier. The present action was brought by Mr. Farrell against Dearborn Manufacturing as a third-party tortfeasor for negligence in the rebuilding and modifying of the press and for strict liability in tort.[1] Defendant filed a motion for

---

[1] We do not address the questions of whether the failure to warn or instruct employees or whether the affirmative negligence by the customer of a labor broker will give rise to a cause of action. But see *Sewell v Bathey Mfg Co,* 103 Mich App 732; 303 NW2d 876 (1981).

summary judgment on the ground that it was not a third-party tortfeasor, but was in fact Mr. Farrell's employer and therefore immune from liability because of the exclusive remedy provision of the workers' compensation act. This motion was denied. Defendant's application for leave to appeal was denied by the Court of Appeals. This Court, after remanding the case to the lower court so that the trial judge could explain why the motion for summary judgment was denied, granted leave to appeal.

Jane Marfuta was employed by Kelly Services, Inc., a labor broker. She was sent to the H. L. Blachford Company to work a diecutting roller press. While on the job, an accident occurred, resulting in the loss of one finger. Plaintiff received workers' compensation benefits and thereafter began the present action alleging negligence of multiple defendants. While this action was pending, plaintiff amended her complaint to add the Blachford Company as a defendant. Settlements were eventually reached with the other parties. Blachford moved for summary or accelerated judgment on the grounds that it was plaintiff's employer within the meaning of the workers' compensation law and that the exclusive remedy provision barred the present action. This motion was granted. The Court of Appeals affirmed in an unpublished per curiam opinion.

Ricky Wooten was employed by Employers Temporary Service and was sent, by it, to work at the Sennett Steel Company. He suffered a severe injury to his right thumb while working on a steel shear. Wooten received workers' compensation benefits from ETS's insurance carrier. He filed this action against Sennett Steel and Cincinnati, Inc.,

the manufacturer of the shear. Defendant Sennett Steel moved for summary judgment, alleging that plaintiff's only remedy was under the workers' compensation law. This motion was granted by the trial court and the judgment affirmed by the Court of Appeals.

Plaintiff John Kellogg, a linesman for the International Hockey League, was allegedly injured when Reginald Fleming, a player for The Hockey Club of Saginaw, Inc. ("Saginaw Gears"), hit him with his hockey stick and pushed him into the goal cage's steel bars. Kellogg brought suit against the hockey team and Fleming. The Hockey Club filed a motion for summary judgment on the ground that the claim was barred by the exclusive remedy provision of the workers' compensation act. This motion was denied by the trial judge, but the judgment was reversed by the Court of Appeals in an unpublished per curiam opinion.

## II

The exclusive remedy provision provides that "[t]he right to the recovery benefits as provided in this act shall be the employee's exclusive remedy against the employer". MCL 418.131; MSA 17.237(131). The language expresses a fundamental tenet of workers' compensation statutes that if an injury falls within the coverage of the compensation law, such compensation shall be the employee's only remedy against the employer or the employer's insurance carrier. The underlying rationale is that the employer, by agreeing to assume automatic responsibility for all such injuries, protects itself from potentially excessive damage awards rendered against it and that the employee is assured of receiving payment for his injuries. In

this scheme, statutory compensation has been sub-
stituted for common-law liability for negligence
and its related defenses. *Smith v Pontiac Motor
Car Co,* 277 Mich 652; 270 NW 172 (1936); *Jones v
Bouza,* 381 Mich 299; 160 NW2d 881 (1968). Ac-
cordingly, it has consistently been held that if an
employee receives a personal injury arising out of
and in the course of his employment, the right to
benefits as provided by the statute shall be that
employee's only remedy against his employer.

It is argued that in the labor broker situation,
the exclusive remedy provision should not auto-
matically preclude a cause of action against the
company or owner of the premises at which the
injury took place because the conditions of liability
as expressed in the statute do not exist.

It is necessary, therefore, to examine the roles of
the labor broker and its customers to determine
which is to be considered the employer for pur-
poses of the exclusive remedy provision.

The labor brokers in three of these cases were
engaged in the business of supplying personnel on
a temporary basis to commercial and industrial
companies. The customers of a labor broker typi-
cally call in their employment needs on a daily
basis, and workers are sent by the broker to fill
these needs. After arriving at the place of busi-
ness, the worker is subject to the control and
authority of the customer and the customer's su-
pervisory personnel. The customer has the power
to discharge the employee from the daily work
assignment and can refuse to accept a worker sent
by the broker. The customer does not pay the
employee directly. Rather, the labor broker pays
the employee and includes as part of its charge to

the customer amounts to cover its expenses for compensation premiums, social security, and other taxes.

The issue of whether employment exists for purposes of the workers' compensation law has been frequently addressed by our courts. The standard to be used is the economic reality test, a broad approach which, in the oft-quoted language of Justice TALBOT SMITH, looks to the totality of the circumstances surrounding the performed work.

"Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one." *Schulte v American Box Board Co,* 358 Mich 21, 33; 99 NW2d 367 (1959).

See, also, *Tata v Muskovitz,* 354 Mich 695; 94 NW2d 71 (1959); *Askew v Macomber,* 398 Mich 212; 247 NW2d 288 (1976); *McKissic v Bodine,* 42 Mich App 203; 201 NW2d 333 (1972); *Nichol v Billot,* 406 Mich 284; 279 NW2d 761 (1979); *Solakis v Roberts,* 395 Mich 13; 233 NW2d 1 (1975); *Allossery v Employers Temporary Service, Inc,* 88 Mich App 496; 277 NW2d 340 (1979).

The economic reality test looks to the employment situation in relation to the statutory scheme of workers' compensation law with the goal of preserving and securing the rights and privileges of all parties. No one factor is controlling.

In *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc,* 17 Mich App 259, 266; 169 NW2d 326 (1969), the Court of Appeals addressed this specific issue and held that the employee's exclusive remedy was under the workers' compensation

laws. Looking at the triangular relationship of the parties, the Court reasoned that for the labor broker (ETS)

"economic reality is based on the fact that a profit can be made by efficiently matching workers with temporary work needs. ETS maintained control of the workers by its practice of daily reassignment and daily payment at its offices. It also maintained the formalities of employment by handling all paper work and payments incident to the employment."

The customer received a worker each day who was subject to its authority. By engaging the services of the labor broker, the customer knew that, in exchange for a set fee, the broker would pay the employees, handle all paperwork, and provide compensation coverage. The Court concluded that the economic reality was that both the labor broker and its customer were employers within the meaning of the workers' compensation statutes. We agree with the reasoning and result of this decision.

The labor broker providing personnel for temporary employment is a common business practice. The roles of the broker and its customer are defined and structured to fulfill short-term needs of many types of industries. When viewed in terms of control, payment of wages, allocation of responsibilities, maintenance of discipline, etc., it is clear that the two are so integrally related that their common objectives are only realized by a combined business effort. The broker supplies as the customers demand.

To conclude that an individual so employed is outside the scope of the exclusive remedy provision would clearly disregard the overall objectives of the statutory scheme.

We therefore hold that the exclusive remedy available to the employee in a labor broker situation is provided by the workers' compensation statute and that a separate tort action against the customer of the labor broker may not be maintained. The judgment of the Court of Appeals is reversed in *Farrell* and affirmed in *Marfuta* and *Wooten.*

## III

On May 4, 1975, John Kellogg, a linesman, was assigned by the International Hockey League to officiate at a season game between the Saginaw "Gears" and the Toledo "Goaldiggers". Kellogg called a play "on-side" in favor of the Goaldiggers, and shortly thereafter the Goaldiggers scored. Reginald Fleming, a player for the Gears, was on the bench when the goal was scored. He skated onto the ice, skated at plaintiff from behind, and allegedly smashed his hockey stick into plaintiff's back, knocking him into the crossbar and goalpost and then onto the ice. It is further alleged that Fleming continued the attack by holding his stick above Kellogg in an intimidating manner while verbally abusing him.

Kellogg filed a petition for workers' compensation benefits. This claim was redeemed after a decision by a hearing referee that the International Hockey League employed the plaintiff.

Kellogg also filed this tort action against The Hockey Club of Saginaw and Reginald Fleming. Defendants moved for summary judgment, claiming that plaintiff's action was barred by the exclusive remedy provisions of the workers' compensation act. The circuit court denied the motion,

concluding that the "economic reality" of the employment relationship was that the International Hockey League was plaintiff's employer and that the league and its member teams are not one and the same. The Court of Appeals reversed. Using the economic reality test, the Court held that the relationship of the league and its member teams was unique and that the plaintiff should not be allowed to maintain a separate tort action against a member team which had been held liable to contribute to the redemption of the workers' compensation award. The Court also concluded that MCL 418.827; MSA 17.237(827) barred this suit for an intentional tort against a co-employee.

As stated above, the economic reality test is the standard used to determine whether or not statutory compensation benefits are the exclusive remedy available to an employee. The total employment situation must be evaluated, not just isolated factors. No single consideration is controlling.

Defendants contend that the International Hockey League is a joint venture, an unincorporated association composed of all member teams organized to foster the team's efforts in securing a profit. They argue that the league is not a separate and identifiable legal entity apart from its member teams since the league's very existence is derived from the powers granted to it by the teams. This unique relationship, defendants believe, leads to the conclusion that a civil action against the team and one of its players may not be maintained.

Our interpretation of the compensation statutes is aided by the opinions of Justice TALBOT SMITH, whose prolific writings give guidance to the rela-

tionship of common-law remedies and workers' compensation law. See *Schulte v American Box Board Co, supra; Salmon v Bagley Laundry Co,* 344 Mich 471; 74 NW2d 1 (1955); *Crilly v Ballou,* 353 Mich 303; 91 NW2d 493 (1958); *Powell v Employment Security Comm,* 345 Mich 455; 75 NW2d 874 (1956). In urging the abandonment of tort concepts when considering the applicability of compensation laws, Justice SMITH's opinions heralded the economic reality test. Compensation is the sole remedy available to an employee who incurs an injury "during his working day while he was doing a natural thing, a thing which an employee, while working, might reasonably do. The fundamental inquiry is whether or not the act in question, either because of its nature, or local custom, or contractual provision, is reasonably to be regarded as part of the on-the-job activities of the human being involved, a part of his normal and reasonable sphere of activities." *Salmon v Bagley Laundry Co, supra,* 490. Exposure to hazards and resultant injuries while performing one's job was certainly within the contemplated coverage of the compensation acts.

"If the injury results from the work itself, or from the stresses, the tensions, the associations, of the working environments, human as well as material, it is compensable. Why? Because those are the ingredients of the product itself. It carries to the market with it, on its price tag stained and scarred, its human as well as its material costs. So says the statute. It does not become us to ignore its plain commands." *Crilly v Ballou, supra,* 326.

The social and remedial purposes of the laws were structured to quickly and assuredly compensate employees for injuries suffered. The legislation was

not, however, designed to be an all-encompassing
shield against liability.

We do not believe that identifying the league as
a joint venture (or conversely, concluding that it is
not a joint venture) determines whether or not the
plaintiff is able to maintain his cause of action.
Rather, we believe that the economic reality test
compels us to independently view the relationship
of the hockey league and its member teams.

The International Hockey League was organized
to promote the game of hockey by promulgating
rules to govern the conduct of member clubs and
by regulating the interrelationships among play-
ers, individual member teams and the other
hockey clubs. The league is empowered to arbi-
trate and settle disputes between the teams and
their players. It is responsible for preparing, super-
vising and managing a schedule of ice hockey
games. It is a not-for-profit, voluntary, unincorpo-
rated association.

The league is financed by its member clubs; it
has no assets of its own. Each year the league
decides what its budget will be and calculates the
games fee that member teams must pay. It as-
sesses member teams for any deficits and pays for
its expenses out of games fees.

The referees and linesmen are responsible to the
commissioner and board of governors of the league
and, of necessity, maintain very little contact with
the member teams. They receive their work as-
signments from the commissioner, as well as in-
struction regarding their jobs. Their salaries are
paid by the league, and only the league has the
power to discipline or fire the officials.

Courts have recognized the special nature of
organized professional sports and their need for a
league structure.

"Professional football is a unique type of business. Like other professional sports which are organized on a league basis it has problems which no other business has. The ordinary business makes every effort to sell as much of its product or services as it can. In the course of doing this it may and often does put many of its competitors out of business. The ordinary businessman is not troubled by the knowledge that he is doing so well that his competitors are being driven out of business.

"Professional teams in a league, however, must not compete too well with each other in a business way. On the playing field, of course, they must compete as hard as they can all the time. But it is not necessary and indeed it is unwise for all the teams to compete as hard as they can against each other in a business way. If all the teams should compete as hard as they can in a business way, the stronger teams would be likely to drive the weaker ones into financial failure. If this should happen not only would the weaker teams fail, but eventually the whole league, both the weaker and the stronger teams, would fail, because without a league no team can operate profitably." *United States v National Football League,* 116 F Supp 319, 323 (ED Pa, 1953). See, also, *State v Milwaukee Braves, Inc,* 31 Wis 2d 699; 144 NW2d 1 (1966); *American Football League v National Football League,* 205 F Supp 60 (DC Md, 1962).

The league exists to maximize the efforts of the individual teams. By regulating, coordinating and supervising the hockey season, each team is better able to succeed. Whereas the league would not exist were it not for the individual member teams, the teams would not operate as successfully were it not for the league. We must conclude, however, that this dependency does not mean that the league and the teams are one and the same for purposes of the compensation statutes. Their special and unique business relationship is distinct from other commercial enterprises.

The league is established as a separate entity with its own specific functions. It regulates the schedules of games, assignment of officials, etc. It is not involved with the teams' daily operations, contractual negotiations or routine affairs. Each member team is separately owned and autonomously administered. Each team seeks to attract the finest players it can so that game attendance is high and a greater profit realized.

We conclude that John Kellogg was employed only by the International Hockey League and not by the Saginaw "Gears". Therefore, the exclusive remedy provision does not bar this cause of action. The unique relationship of a league, referees and teams does not present the traditional dual-employment situation, nor is it an instance of one individual rendering a similar service for multiple employers. Rather, officials are hired by and work only for the league; the teams contract with and are responsible for their own personnel. No similar business enterprise presents the unusual relationship we must consider in this case. We are persuaded that the economic reality is that referees and linesmen are employed only by the league.

Defendants argue that MCL 418.827; MSA 17.237(827)[2] which allows certain third-party actions in addition to the receipt of compensation benefits and bars suits by co-employees for injuries sustained in the course of their employment pre-

---

[2] The relevant language of MCL 418.827; MSA 17.237(827) provides:

"(1) Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies but the injured employee or his dependents or personal representative may also proceed to enforce the liability of the third party for damages in accordance with the provisions of this section."

cludes this action against defendant Fleming. We note, however, that only by concluding that the league and its members are engaged in a joint enterprise can a linesman and a player be considered co-employees. Since we have held that the Saginaw Gears is not plaintiff's employer, its team member is not a fellow employee. Thus, the action against defendant Fleming for an intentional tort is not barred.

The judgment of the Court of Appeals is reversed.

KAVANAGH, WILLIAMS, LEVIN, and COLEMAN, JJ., concurred with FITZGERALD, C.J.

RYAN, J. *(dissenting in part).* I dissent from part II and concur in part III of my brother's opinion.

As my colleague says:

"It is necessary, therefore, to examine the roles of the labor broker and its customers to determine which is to be considered the employer for purposes of the exclusive remedy provision."

Unfortunately, that is not what is done in the Court's opinion. Instead, it is apparently held that "in a labor broker situation", both the labor broker and its customer are employers within the meaning of the workers' compensation statutes. The only authority cited for that conclusion is a 1969 Court of Appeals decision, *Renfroe v Higgins Rack Coating & Mfg Co, Inc,* 17 Mich App 259, 266; 169 NW2d 326 (1969), in which, in dicta, that Court "found" that both the labor broker and the customer "were employers of [the worker], each in a different way".

*Renfroe* was an appeal from a trial court award of summary judgment in favor of a defendant

customer, dismissing the worker's third-party tort-feasor claim against the customer for the reason that, as a matter of law, the "exclusive remedy" provision of the workers' compensation act bars the employee's tort claim. The rule of the case is that the question whether a manufacturing company-customer was an "employer" within the meaning of the workers' compensation statute is a question of law for the court and not for the trier of fact. It was on that basis that the decision of the trial court to that effect was affirmed. The "dual employment" language in the Court of Appeals opinion is mere dictum, unnecessary to the decision, and an inappropriate predicate for the Court's judgment in this case.

There is no Michigan Supreme Court authority finding "dual employment" by a labor broker and its customer for workers' compensation purposes.

In *Wing v Clark Equipment Co,* 286 Mich 343; 282 NW 170 (1938), this Court found "dual employment" where the worker was assigned as an "undercover efficiency expert" to work in a manufacturing plant. The plaintiff received separate wages from both employers and was under the direction and control of each. His efficiency reports were made outside of his hours of employment in the manufacturing plant. That was not a labor broker situation, however.

In a labor broker case, this Court has found that the labor broker and not the customer was the employer and, thus, was "exclusively liable for the payment of [workers' compensation] benefits", *White v Extra Labor Power of America,* 395 Mich 13, 26; 233 NW2d 1 (1975).

Other cases cited, but not analyzed in the Court's opinion, suggest that this Court's view has been that an employee may have but one employer

for workers' compensation purposes. In *Goodchild v Erickson,* 375 Mich 289; 134 NW2d 191 (1965), a local moving company acted as a labor broker in providing manpower to an affiliated interstate mover at a fixed rate per hour. The local moving company kept 20% of the hourly rate and paid the rest to the worker. This Court rejected the argument that the employee was "loaned" to the interstate mover and held that the local mover rather than the interstate mover was the "employer" required to pay workers' compensation benefits. In *Arnett v Hayes Wheel Co,* 201 Mich 67; 166 NW 957 (1918), and *Janik v Ford Motor Co,* 180 Mich 557; 147 NW 510 (1914), this Court applied the old "control" test to determine which of two possible employers was the worker's "employer".

This Court's adoption of the rationale and result of *Renfroe, supra,* is inappropriate and unwise. Under the Worker's Disability Compensation Act of 1969, "the employer" is solely and totally responsible for workers' compensation benefits; even in the rare "dual employment" situation of *Wing, supra,* two *separate* awards based on the wages paid by each employer were appropriate. My colleague's approach suggests that if two companies can divide the attributes of employment equally enough, *both* will be entitled to the "exclusive remedy" bar of the statute, even though only one set of workers' compensation insurance premiums must be paid. In short, my colleague's opinion advertises "two bars for the price of one".

Moreover, from a purely policy perspective, the Court's decision enables a company to insulate itself from the economic consequences of an unsafe workplace. It seems clear that the Legislature contemplated that either total liability or higher workers' compensation insurance rates would pro-

vide an economic incentive for every company to care about worker safety. It now appears that the labor broker scheme may be an expedient method of avoiding either type of liability.

The Court would have been better advised today to carry out its stated duty "to examine the roles of the labor broker and its [customer] to determine which is to be considered the employer for purposes of the exclusive remedy provision [of the Worker's Disability Compensation Act]".

RILEY, J., took no part in the decision of this case.