David A. HUNTER and Virginia
Hunter, Plaintiffs,

v.

INDIANA AND MICHIGAN POWER
COMPANY, a Michigan corporation,
Defendant/Third–Party Plaintiff,

v.

NUCLEAR SUPPORT SERVICES,
INC., a Virginia corporation,
Third–Party Defendant.

No. 4:92–CV–5.

United States District Court,
W.D. Michigan, S.D.

May 26, 1993.

Larry D. VanderWal, Linsey, Strain & Worsfold, Grand Rapids, MI, for David A. and Virginia Hunter.

David S. York, York & Miller, P.C., Kalamazoo, MI, for Indiana and Michigan Power Co.

Thomas F. Blackwell, Smith, Haughey, Rice & Roegge, P.C., Grand Rapids, MI and Wayne D. Gardner, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, for Nuclear Support Services, Inc.

*ORDER GRANTING DEFEN-DANT/THIRD–PARTY PLAINTIFF INDIANA MICHIGAN POWER COM-PANY'S MOTION FOR SUMMARY JUDGMENT AND THIRD–PARTY DEFENDANT NUCLEAR SUPPORT SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT ON BE-HALF OF INDIANA MICHIGAN POWER COMPANY*

MILES, Senior District Judge.

This case is before the court on motions for summary judgment filed by defendant/third-party plaintiff Indiana Michigan Power Company ("I & M") and by third-party defendant Nuclear Support Services, Inc. ("NSS") on behalf of I & M. At issue on these motions is whether the plaintiff's action is barred by the exclusive remedy provision of Michigan's Worker's Disability Compensation Act.

Upon due consideration, and for the reasons set forth in the court's order granting summary judgment in the related case of *Binder v. Indiana Michigan Power Company,* No. 1:92–CV–66 (a copy of which is attached), the court hereby **GRANTS** the motions for summary judgment.

Because I & M has conceded that granting this motion moots its third-party complaint filed against NSS[1], this action is hereby **DISMISSED IN ITS ENTIRETY.**

So Ordered.

ATTACHMENT

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

JACQUELINE BINDER, Administratrix of the Estate of James C. Binder, Deceased,

Plaintiff,

v.

INDIANA MICHIGAN POWER COMPA-NY, d/b/a DONALD C. COOK NUCLE-AR PLANT, Defendant and Third–Party Plaintiff,

v.

NUCLEAR SUPPORT SERVICES, INC., a Virginia corporation, Third–Party Defendant.

*ORDER GRANTING DEFEN-DANT/THIRD–PARTY PLAINTIFF INDIANA MICHIGAN POWER COM-PANY'S MOTION FOR SUMMARY JUDGMENT AND THIRD–PARTY DEFENDANT NUCLEAR SUPPORT SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT ON BE-HALF OF INDIANA MICHIGAN POWER COMPANY*

This case is before the court on motions for summary judgment filed by defen-

---

**1.** This concession was made in a brief filed by I & M in the *Binder* action in response to a motion by NSS for partial summary judgment. Although this pleading (docket no. 82 in *Binder* ) does not appear to have been filed in this action, I & M refers to both "Binder and Hunter" in the same paragraph in which it makes its concession of mootness.

dant/third-party plaintiff Indiana Michigan Power Company ("I & M") and by third-party defendant Nuclear Support Services, Inc. ("NSS") on behalf of I & M. At issue on these motions is whether the plaintiff's action is barred by the exclusive remedy provision of Michigan's Worker's Disability Compensation Act. Upon due consideration, and for the reasons which follow, the court hereby **GRANTS** the motions for summary judgment.[1] Because I & M has conceded that granting this motion moots its third-party complaint filed against NSS, this action is hereby **DISMISSED IN ITS ENTIRETY.**

### FACTS

On July 13, 1990, an accident occurred at the Donald C. Cook Nuclear Plant ("Cook") in Bridgman, Michigan. Cook is owned by defendant I & M. Although the exact nature of the accident and the circumstances leading to its occurrence are in dispute, for purposes of this motion, plaintiff's allegations regarding what happened will be regarded as true. James Binder, an electrical technician employed by NSS, was killed in an electrical explosion while performing work at Cook. Binder and three other workers, including another NSS employee and two I & M employees, comprised a team of electrical technicians assigned by an I & M supervisor to perform work on a current transformer at the plant at the time of the accident. The plaintiff, Jacqueline Binder, administratrix of the estate of James Binder, contends that the explosion was caused by I & M's negligence in, among other things, failing to "deactivate" the accident area while Binder and the other employees were working on high voltage electrical equipment.

What is important, for purposes of this motion, is not how the accident happened but rather the employment status of Binder at the time that it happened. It is undisputed that Binder, who was killed in the accident, was employed by NSS at the time of the accident. During a scheduled outage[2] of one of the Cook reactors, I & M required the assistance of additional workers to accomplish certain projects to be performed during this period. In order to acquire the extra workers, I & M contracted with NSS to provide those workers needed during the outage. Plaintiff's decedent Binder and one of the other injured employees, James Hunter, were included among a group of employees supplied by NSS to work for I & M at the Cook plant.

Plaintiff originally filed this action in the United States District Court for the Eastern District of Michigan. Venue was subsequently transferred to this court. I & M has filed a third-party action against NSS, asserting claims of negligence, contractual indemnification, breach of contract, and vicarious liability.[3] However, in defense of plaintiff's claims, I & M contends that Binder must be legally considered an I & M employee, therefore limiting plaintiff to the exclusive remedy of workers' compensation benefits. In its own motion filed on behalf of I & M, NSS agrees with I & M's position on the exclusive remedy issue.

### STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In evaluating a motion for sum-

---

1. I & M and NSS have requested oral argument on their motions. The court, having reviewed all of the briefs and supporting materials filed in connection with the motions, has concluded that oral argument is unnecessary and would be unlikely to shed any significant light on the issues.

2. A "scheduled outage" refers to the temporary shutdown of a reactor for regular maintenance and fueling.

3. Three additional lawsuits arising out of the Cook accident are also pending before this court: *Hunter v. Indiana–Michigan Power Company*, No. 4:92–CV–5; *Emerson v. Nuclear Support Services, Inc.*, No. 1:91–CV–862; and *Frizzell v. Nuclear Support Services, Inc.*, 1:91–CV–863. In her response to I & M's motion, plaintiff states that these actions have been consolidated. However, only *Emerson* and *Frizzell* have been consolidated, for discovery purposes.

mary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### *ANALYSIS*

■ As indicated in the NSS promotional materials which plaintiff has provided with her response to the motions, NSS advertises itself as providing trained nuclear industry personnel to perform various tasks during both scheduled and emergency outages. NSS provides staff to its customers on an as-needed basis; it provides the individuals or crews needed, and then sends them to another job when their work for the customer is completed. NSS, therefore, falls within the definition of what is traditionally known as a "labor broker."

The exclusive remedy provision of Michigan's Worker's Disability Compensation Act, M.C.L. § 418.131(1) provides in pertinent part as follows:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer[.]

In *Farrell v. Dearborn Manufacturing Co.*, 416 Mich. 267, 330 N.W.2d 397 (1982), the Michigan Supreme Court examined the roles of a labor broker and its customers in a group of consolidated cases, to determine which entity—the broker or the customer—was to be considered the employer for purposes of the exclusive remedy provision:

> The labor brokers in three of these cases were engaged in the business of supplying personnel on a temporary basis to commercial and industrial companies. The customers of a labor broker typically call in their employment needs on a daily basis, and workers are sent by the broker to fill these needs. After arriving at the place of business, the worker is subject to the control and authority of the customer and the customer's supervisory personnel. The customer has the power to discharge the employee from the daily work assignment and can refuse to accept a worker sent by the broker. The customer does not pay the employee directly. Rather, the labor broker pays the employee and includes as a part of its charge to the customer amounts to cover its expenses for compensation premiums, social security and other taxes.

330 N.W.2d at 400. After examining this relationship, the Court in *Farrell*, following *Renfroe v. Higgins Rack Coating & Manufacturing Co., Inc.*, 17 Mich.App. 259, 266, 169 N.W.2d 326 (1969), concluded that in a labor broker situation the exclusive remedy provision precludes a cause of action against the customer:

> The customer received a worker each day who was subject to its authority. By engaging the services of the labor broker, the customer knew that, in exchange for a set fee, the broker would pay the employees, handle all paperwork, and provide compensation coverage. The Court [in *Renfroe*] concluded that the economic reality was that both the labor broker and its customer were employers within the meaning of the workers' compensation statutes. We agree with the reasoning and result of this decision.
>
> The labor broker providing personnel for temporary employment is a common business practice. The roles of the broker and its customer are defined and structured to fulfill short-term needs of many types of industries. When viewed in terms of control, payment of wages, allocation of responsibilities, maintenance of discipline, etc., it is clear that the two are so integrally related that their common objectives are only realized by a combined business ef-

fort. The broker supplies as the customers demand.

To conclude that an individual so employed is outside the scope of the exclusive remedy provision would clearly disregard the overall objectives of the statutory scheme.

We therefore hold that the exclusive remedy available to the employee in a labor broker situation is provided by the workers' compensation statute and that a separate tort action against the customer of the labor broker may not be maintained....

*Id.* 330 N.W.2d at 400–01. At least one other Michigan decision, in addition to *Farrell* and *Renfroe,* has applied this same rule in a labor broker situation. *Hoffman v. National Machine Co.,* 113 Mich.App. 66, 317 N.W.2d 289 (1982).

There can be no genuine doubt in this case that the description of a labor broker/customer relationship set forth in *Farrell* also substantially describes the roles of NSS and I & M in this case. However, notwithstanding the weight of the authority, plaintiff contends that the exclusive remedy provision does not apply in this case (or, in the alternative, unspecified issues of fact remain to be decided) because NSS was not actually a labor broker, but rather a "contractor" performing pursuant to a contract with I & M. Plaintiff, pointing to a provision of the NSS/I & M contract which refers to NSS as an "independent contractor," argues that I & M may be held liable in tort for Binder's death. How does plaintiff reach this conclusion? Though acknowledging the general rule under Michigan law that an owner of property is not liable to an employee of an independent contractor for negligence, *see, e.g., Samodai v. Chrysler Corp.,* 178 Mich.App. 252, 443 N.W.2d 391, 393 (1989), *appeal denied,* 433 Mich. 877 (1989), plaintiff contends that I &

M may be held liable under one of two main exceptions to this general rule, which provides that an owner may be held liable to an employee of an independent contractor for negligence where the work is "inherently dangerous," i.e., the work can reasonably be foreseen as dangerous to third parties. *Id.*[4]

Plaintiff's argument that NSS' status as an "independent contractor" subjects I & M to liability to NSS' employees for negligence is nothing more than another way of saying that plaintiff should be permitted to sue I & M as a third party tortfeasor under M.C.L. § 418.827(1). This argument, therefore, merely begs the question, which is: was I & M a co-employer of Binder, thus resulting in the applicability of the exclusive remedy provision contained in M.C.L. § 418.131, or was it a third party tortfeasor, resulting in the applicability of § 418.827?

■ Where the only matter in dispute is whether the interpretation of evidence is such as to establish an employee relationship, resolution of the defendant's status is an issue of law for the court to determine. *Nichol v. Billot,* 406 Mich. 284, 279 N.W.2d 761, 767–68 (1979). Plaintiff has not disputed that the evidence submitted in this case shows that (1) NSS paid Binder's wages, kept track of his hours, controlled his vacation schedule, and set the wage rate (Plaintiff's Consolidated Response at 13); (2) NSS had an on-site supervisor whose duty included "keeping tabs" on Binder "in all but the minute-to-minute exercise of his actual work" (*Id.*); (3) the NSS on-site supervisor's duties were "strictly administrative," and "he had nothing to do with the supervision of electrical technicians, including no scheduling or no direct personal contact with the electricians" (*Id.* at 4); (4) "because of the nature of the task to be performed by the NSS people, the NSS employees on site would defer to the I & M employees," or, as another NSS employee has stated, "They [I & M] would be our

4. Plaintiff fails to mention the other main exception to the general rule—that a property owner may be held liable to an employee of an independent contractor for negligence where the owner retains control over the work done and the contractor's activities. *Samodai,* 443 N.W.2d at 393. Plaintiff's decision to argue herself into one narrow exception to the general rule is understanda-

ble, given the relevance of the defendant's control over the worker in determining the applicability of the exclusive remedy provision. However, plaintiff's arguments regarding "inherently dangerous" activities stray far afield from the issue presented by the present motions, and the court declines to further follow her unnecessary foray into this area.

lead man, we would be the tool toters" (*Id.* at 6); and (5) Richard Hunsicker, an I & M supervisor, was in charge of both I & M and NSS employees in the performance of their individual tasks (*Id.* at 7). In addition to these undisputed facts, the NSS/I & M contract, the terms of which cannot reasonably be disputed, contains provisions requiring NSS to comply with all rules and instructions issued by I & M, as well as a provision prohibiting NSS from withdrawing "key personnel" from the work in progress without prior notice to and approval of I & M. There has also been undisputed deposition testimony presented showing that I & M was allowed to approve which workers would be sent to Cook by NSS, and that I & M could suggest that NSS workers be disciplined. Based upon these facts alone, the court concludes that there can be no doubt but that the rule of *Farrell* applies, and that plaintiff is barred by the exclusive remedy provision from maintaining this action against I & M.

█ Plaintiff argues that a material issue of fact remains because there is evidence that NSS retained some control over Binder "along with other indicia of continued employment." Without question, Binder continued to be an actual employee of NSS, whether or not NSS was exercising control over his actions at the time of the accident. This fact does not, however, preclude a determination that Binder was also an employee of I & M for workers' compensation purposes. Under Michigan law, a worker may have more than one "employer" for purposes of the exclusive remedy provision. *Renfroe,* 169 N.W.2d at 330 (both labor broker and customer were employers of plaintiff for workers' compensation purposes). Accordingly, plaintiff's contention that NSS may not have resigned full control over Binder does not raise a genuine issue of material fact precluding summary judgment in favor of I & M.

### CONCLUSION

For the reasons set forth above, the court **GRANTS** I & M's motion for summary judgment, as well as the motion for summary judgment on behalf of I & M filed by NSS. Because I & M has conceded that its third-party action against NSS is mooted by a decision in I & M's favor on the exclusive remedy issue, this action, including the third-party complaint, is **DISMISSED IN ITS ENTIRETY.**

So ordered this 24th day of May, 1993.

/s/   Wendell A. Miles

Wendell A. Miles, Senior Judge