*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BILLY ETHERIDGE,

Plaintiff-Appellant,

UNPUBLISHED
February 17, 2022

v

JJ CURRAN CRANE COMPANY,

Defendant-Appellee.

No. 356775
Wayne Circuit Court
LC No. 20-003588-NO

Before: K. F. KELLY, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Plaintiff, Billy Etheridge, appeals as of right the trial court's order granting summary disposition in favor of defendant, JJ Curran Crane Company. Finding no error warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant is a crane-rental company that provides cranes with and without operators. Defendant provides customers with the crane and the operator, but the operator's daily tasks are at the customer's direction. In March 2018, defendant entered into a Crane Rental & Operator Agreement ("Agreement") with Ferraro Pile & Shoring, Inc., to provide two cranes and two operators for construction of a seawall in Detroit, Michigan. Defendant hired Ryan Blake as the crane operator, and Ferraro hired plaintiff as a welder for the job. Ferraro paid defendant an hourly rate for Blake's operation of the crane, but Blake's paychecks came from defendant.

Each day before Blake began work, he inspected the crane using a checklist from defendant, attended sitewide and Ferraro-specific meetings, and presented a "daily crane ticket" to a Ferraro supervisor for approval. The daily crane ticket required the Ferraro supervisor to acknowledge terms and conditions that were identical with those in the Agreement. As relevant here, the terms and conditions stated that Blake would be "under the exclusive jurisdiction, supervision and control of [Ferraro]," and would be "[Ferraro]'s agent, servant, and employee."

On October 29, 2018, as plaintiff was conducting a cutting operation on the seawall, Blake's operation of the crane caused a suspended piece of metal to crush plaintiff's hand, resulting

-1-

in significant injuries. Plaintiff subsequently filed a complaint against defendant alleging Blake—as defendant's employee—negligently operated the crane that injured plaintiff. Defendant moved for summary disposition, arguing it was entitled to judgment as a matter of law because Blake was a Ferraro employee and, consequently, the exclusive-remedy provision under the Worker's Disability Compensation Act of 1969 (WDCA), MCL 418.101 *et seq.*, barred plaintiff from bringing suit against defendant for his work-related injuries. Plaintiff opposed the motion, arguing the economic-reality test established a question of fact as to whether Blake was a Ferraro employee and, therefore, whether the WDCA's exclusive-remedy provision applied. The trial court concluded there was no question of fact that Blake was a Ferraro employee because the evidence demonstrated Ferraro directed and controlled Blake's work, Ferraro paid for Blake's wages, and Blake worked toward completion of Ferraro's project. Accordingly, the trial court granted defendant summary disposition under MCR 2.116(C)(10) because the WDCA barred plaintiff's negligence suit as a matter of law. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews "de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). This Court "review[s] a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

## III. ANALYSIS

Plaintiff argues the trial court erred when it granted summary disposition in favor of defendant because, under the economic-reality test, reasonable minds could differ as to whether Blake was an employee of defendant or Ferraro. Thus, plaintiff contends defendant was not entitled to summary disposition because a question of fact existed as to whether the WDCA barred plaintiff's suit against defendant. We disagree.

The WDCA "substitutes statutory compensation for [an employer's] common-law negligence liability" for employees injured during their employment. *Clark v United Technologies Auto, Inc*, 459 Mich 681, 686-687; 594 NW2d 447 (1999). The WDCA thus entitles injured employees to statutory benefits as the "exclusive remedy against the employer" regardless of fault and, consequently, bars negligence actions against employers for work-related injuries. *Id*. at 687; MCL 418.131(1).[1] "[T]he exclusive remedy provision of the WDCA limits the liability of the

---

[1] The exclusive-remedy provision of the WDCA states, in relevant part: "The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort." MCL 418.131(1).

employer and provides statutory compensation for employees regardless of fault." *Pro-Staffers, Inc v Premier Mfg Support Servs, Inc*, 252 Mich App 318, 323; 651 NW2d 811 (2002). The WDCA does not define the term "employer," and courts look to the economic-reality test to "determine whether an employment relationship exists for the purposes of the exclusive[-]remedy provision." *Clark*, 459 Mich at 687. Defining the employment relationship under the WDCA is a question of law "if the evidence on the matter is reasonably susceptible of but a single inference," but it is an issue of fact for a jury "where conflicting inferences may reasonably be drawn from the known facts." *Id*. at 694.

Determining whether an employment relationship exists under the economic-reality test requires consideration of "the totality of the circumstances" using the following factors, none of which alone are controlling: "(1) [the] control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id*. at 688-689 (quotation marks and citation omitted; alteration in original). The economic-reality test recognizes an employee may simultaneously work for two employers, wherein "both claim employer status for the purposes of the [WDCA's] exclusive[-]remedy provision." *Id*. at 690. See also *Kidder v Miller-Davis Co*, 455 Mich 25, 46; 564 NW2d 872 (1997) (holding the economic-reality test established two businesses shared "the rights and responsibilities over [their] workers" and were, therefore, both employers under the WDCA).

Neither party disputes defendant acted as a labor broker for Ferraro. A labor broker provides personnel for temporary employment. *Farrell v Dearborn Mfg Co*, 416 Mich 267, 277; 330 NW2d 397 (1982).

> The customers of a labor broker typically call in their employment needs on a daily basis, and workers are sent by the broker to fill these needs. After arriving at the place of business, the worker is subject to the control and authority of the customer and the customer's supervisory personnel. The customer has the power to discharge the employee from the daily work assignment and can refuse to accept a worker sent by the broker. The customer does not pay the employee directly. Rather, the labor broker pays the employee and includes as part of its charge to the customer amounts to cover its expenses for compensation premiums, social security and other taxes. [*Id*. at 275-276.]

"A labor broker-customer arrangement presents a unique employment relationship and adds a further dimension to the analysis of who is an employer for purposes of the WDCA." *Kidder*, 455 Mich at 35. Under such a system, generally both the labor broker and the customer are considered employers under the WDCA. *Farrell*, 416 Mich at 277. Therefore, "the exclusive remedy available to the employee in a labor[-]broker situation is provided by the [WDCA]" and the injured employee may not maintain a negligence suit against either employer. *Id*. at 278. "Establishing a labor[-]broker relationship does not . . . necessarily end the analysis," however, because courts must still evaluate the employment relationship under the economic-reality test. *Kidder*, 455 Mich at 42.

As to the first factor of the economic-reality test, control over Blake's work, Ferraro "received a worker each day who was subject to its authority," as is common in most labor-broker

relationships. See *Farrell*, 416 Mich at 277. Despite plaintiff's assertions, Ferraro did not merely direct Blake as to general tasks. Ferraro employees directly controlled all of Blake's work, which was dictated by Ferraro's daily goals and needs. Moreover, Blake relied on Ferraro employees to direct and signal his use of the crane, again indicating every task he performed with the crane required Ferraro's implicit or explicit direction and approval. Additionally, Blake performed his work at the same time as the Ferraro crew and received his daily tasks at the Ferraro-specific meetings.

The terms of the Agreement and the daily crane tickets are also relevant to demonstrate control over Blake's work. See *Kidder*, 455 Mich at 46 (explaining a contractual agreement is "but one factor" for courts to consider when analyzing an employment relationship). The terms Ferraro agreed to each day stated that "the [crane] operator is under the Lessee's exclusive direction and control and is Lessee's agent, servant, and employee." At a minimum, this provision demonstrates Ferraro had the contractual ability to exert authority over Blake's work.

Nevertheless, Plaintiff argues Blake was independent of Ferraro—and Ferraro had no authority over Blake's work—because Blake felt free to leave during Ferraro's daily task meeting. Plaintiff's argument, however, misstates the record. Blake stated he walked away while a manager was informally directing Ferraro employees *after* Ferraro's daily meeting, which Blake attended. In addition to being an informal discussion that Blake was not required to attend, the employees were discussing a portion of the cutting operation that did not apply to Blake's operation of the crane.

Plaintiff also argues that because he and defendant's financial controller, Michael Coffman, considered Blake to be defendant's employee, that demonstrates defendant's control over Blake. That Blake was on the job to use a crane owned by defendant does not diminish the control Ferraro had over Blake's use of that crane. Similarly, the fact that defendant required Blake to perform daily inspections of the crane and that defendant ordered Blake be drug tested after the incident do not demonstrate defendant exerted significant control over Blake's daily activities. To the extent these facts show control over Blake, they still do not demonstrate there was a question of fact as to which company employed Blake, however, because "[i]t is not necessary to make fine semantic distinctions as to types of degrees of control, et cetera. It is enough to say that either [employer] could be liable under the [WDCA], therefore, both are protected by it." *Kidder*, 455 Mich at 37 (quotation marks and citation omitted).

With respect to the second economic-reality factor, the payment of Blake's wages, it is undisputed Blake's checks came from defendant. However, "who writes the check is not dispositive of the employer-employee relationship," especially considering Ferraro paid defendant for each hour Blake worked on the job. See *Kidder*, 455 Mich at 44. It is generally understood in labor-broker relationships that, "[b]y engaging the services of the labor broker, the customer [knows] that, in exchange for a set fee, the broker would pay the employees, handle all paperwork, and provide compensation coverage." *Farrell*, 416 Mich at 277. Thus, Ferraro's payment for Blake's work merely passed through defendant. To say Blake's wages came from defendant ignores the economic reality of the situation—the money to pay those wages came from Ferraro, which also received the benefit of Blake's work.

As to the third economic-reality factor, Ferraro had authority over Blake's acquisition, retention, and discipline. Although defendant selected Blake for Ferraro, the agreement expressly stated Ferraro "may reject [the] operator" defendant selected. Nonetheless, plaintiff argues Ferraro had no right to discipline Blake because it did not order him to get drug tested after the incident as defendant did. This argument, however, is unpersuasive because nothing in the record demonstrates Ferraro wanted to or attempted to require Blake be drug tested. Nor does the record demonstrate Ferraro was prohibited from ordering Blake to take a drug test. In light of the Agreement, which gave Ferraro unqualified control over Blake by giving Ferraro the affirmative "duty . . . to give specific instructions and directions" to the crane operator, who was "under [Ferraro's] exclusive direction and control," that Ferraro *did not* discipline Blake cannot be seen as evidence that Ferraro *could not* discipline Blake. Moreover, Derrick Stanek, Ferraro's operations manager, acknowledged he had unilateral authority to remove Blake from the jobsite if he were visibly impaired.

Lastly, under the fourth economic-reality factor, "[t]he roles of [defendant] and [Ferraro were] defined and structured to fulfill [their] respective short-term needs." See *Farrell*, 416 Mich at 277. Defendant supplied the crane operator that Ferraro ordered. Ferraro could not have completed its project without Blake operating defendant's crane, and Blake worked toward completing Ferraro's project goals. Blake arrived and left with the Ferraro crew, whom he worked alongside and from whom he took direction. The evidence therefore demonstrates that Ferraro and defendant were "so integrally related that their common objectives [were] only realized by a combined business effort." *Id*.

Considering the totality of the circumstances, the evidence presented to the trial court demonstrates there is no question of fact that, under the economic-reality test, Blake was a Ferraro employee. Consequently, the WDCA served as plaintiff's exclusive remedy for injuries Blake caused during the course of their employment with Ferraro. Because the WDCA barred plaintiff from bringing a negligence suit against defendant for his work-related injuries, defendant was entitled to summary disposition under MCR 2.116(C)(10).

Affirmed. Defendant, as the prevailing party, may tax costs.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Michael F. Gadola